## FOLSOM *v.* BELKNAP COUNTY MUTUAL FIRE INSURANCE CO.

A mortgage of property insured by a mutual fire insurance company is not an alienation, unless there is something in the policy, charter or by-laws of the company that makes it an alienation.

At common law, a contract of insurance is not assignable so as to give an action to the assignee in his own name.

In the absence of any provision in the charter or by-laws of a mutual fire insurance company, whereby the assignee becomes a member of the company, the action, in case of loss, must be in the name of the assured, with whom the contract was made.

If the charter or by-laws of a mutual fire insurance company contain a provision that a mortgagee, as well as purchaser of buildings insured, may become a member of the company by having the policy assigned, and an assignment be made and ratified, in case of loss, an action may be brought in the name of the assignee.

ASSUMPSIT, on a policy of insurance. Plea, the general issue.

At the trial, the following facts appeared:

On the first day of July, 1852, Wm. W. W. Ballard applied to the company for an insurance of $1000 on his stock in trade, consisting of English, American and West India goods and produce, situated in Parsonsfield, in the county of York, Maine. On the 5th of July, the application was approved by Richard Gove and John C. Moulton, two of the directors, and on that day a policy was issued in pursuance of the application. On the 11th of August, 1852, Ballard, having mortgaged his stock in trade to the plaintiff, executed an instrument on the back of the policy, of which the following is a copy:

### "ASSIGNMENT.

"Having mortgaged the buildings within insured, and the land whereon they stand, to Levi Folsom, by W. W. W. Ballard, I hereby assign to said Levi Folsom, of New Bed-

ford, Mass., the within policy, to hold as collateral security for the performance of the condition of said mortgage.

" W. W. W. BALLARD, for Levi Folsom.

" The directors consent.

" JOHN C. MOULTON, } Directors.
" RICHARD GOVE, }

" Dated August 11, 1852.

" Attest, JERE. ELKINS, Secretary."

The defendants excepted to this, because it did not transfer the interest of Ballard in the policy.

The 12th section of the charter of the company provides that " when any house or other building shall be alienated by sale or otherwise, the policy shall thereupon be void and be surrendered to the directors of said company, to be cancelled; and upon such surrender, the assured shall be entitled to receive his deposit note, on the payment of his, her or their proportion of losses and expenses that have accrued prior to such surrender; provided, however, that the grantee or alienee having the policy assigned to him, may have the same ratified and confirmed to him, her or them, for his, her or their own proper use and benefit, upon application to the directors, and with their consent, within thirty days next after such alienation, on giving proper security, to the satisfaction of said directors, for such portion of the deposit or premium note as shall remain unpaid; and by such ratification and confirmation in the party causing the same, shall be entitled to all the rights and privileges, and subject to all the liabilities to which the original parties insured were entitled and subject under this act."

The 3d section of the charter provides that " the board of directors shall consist of not more than nine nor less than five members, and that a majority of the whole number shall constitute a quorum for the transaction of business." An act in amendment of the charter passed on the 22d of June, 1847, provides that " instead of the number of direc-

tors specified in the act to which this is in amendment, the board shall consist of not more than twenty nor less than nine directors."

It is provided by the 11th article of the by-laws, that " every application for insurance shall be examined and approved, and the rate of insurance fixed upon, by at least two of the board, before a policy shall be issued thereon;" and the 15th article of the by-laws provides that " in case of alienation of any house or building, by sale or otherwise, or in case of removal, where furniture or goods only were insured, the policy shall thereupon be void, and shall be surrendered to the directors to be cancelled; and on such surrender, the insured shall be entitled to recover his deposit notes, &c.; provided that the grantee or alienee above named may have the same ratified and confirmed for his benefit, on application to the directors, within thirty days, and giving security, &c., and in such case he shall be entitled to all the privileges and incur all the liabilities of the institution equally with other members."

The defendants then contended that the transfer of the policy to the plaintiff had not been legally approved of and assented to by the directors, as it had the assent of two only of them; that the 11th section of the by-laws does not apply to cases of mortgage, and if it did, it would be contrary to the charter; that no alienation of a house or building can be valid without the approval of the directors, and here was not such an approval as the charter required; that neither the charter nor the by-laws applied to an alienation of a policy effected on goods, and that this could not be treated as a mortgage of real estate; that even if it could be so treated, a mortgage is not such an alienation as the charter intends; that it cannot be regarded as an alienation for some purposes and not for others; and that it cannot be an alienation for the purpose of enabling the insured to transfer his policy to the mortgagee, and yet not such an alienation as defeats the policy and renders it void.

The plaintiff then offered to show the existence of a mortgage of the goods insured to the plaintiff at the time of the alleged assignment of the policy, its due execution, its record, and that all the requisite formalities of the law had been complied with; the agreement of Ballard to assign the policy to the plaintiff as collateral security; that during the year 1852, Abner Blaisdell was an acting agent of the company, and was authorized to take applications for insurance therein; that the transfer of the policy was made under the directions of the agent as to form; that the policy was delivered to the plaintiff by Ballard as an assignment, and that the guaranty note of the plaintiff was executed and delivered to the defendants, and accepted by the company. He also contended that, upon a fair construction of the 15th article of the by-laws, it embraces an insurance of any kind of property, and offered to show further, that it was the usage of the company to issue policies by the assent of two of the directors, and that it was their usage, also, that two directors should assent to assignments in cases of alienations and mortgages.

The court being of opinion that the action could not be maintained, nonsuited the plaintiff, subject to the opinion of the superior court; and the case was accordingly transferred for determination.

*Fowler & Mugridge*, with whom was *Bellows*, for the plaintiff.

I. The assignment, though in some respects informal, was valid, and transferred the policy to the plaintiff. Ballard alone could be the assignor; the policy was made to him, and nobody else could assign it. The plaintiff was the assignee. The assignment distinctly states the policy to be assigned to him. There could be no assignment by the plaintiff to himself. Ballard was clearly intended as the assignor; there could manifestly be no other intention or design.

Folsom *v.* Belknap County M. F. I. Co.

The evident intention of the parties is to be carried out, if the instrument will admit of a construction in accordance with it. . Chitty on Contracts (5th Am. ed.) 71; *Tenney* v. *Beard*, 5 N. H. Rep. 58; *White* v. *Gay*, 9 N. H. Rep. 126; *Cochecho M. Co.* v. *Whittier*, 10 N. H. Rep. 305; *Chamberlain* v. *Cram*, 1 N. H. Rep. 60; Chitty on Contracts 79; Story on Contracts (1st ed.) pp. 149, 150, §§ 231, 232, 233, and authorities. Here, then, is no difficulty in that respect. The words "for Levi Folsom," after Ballard's signature, were evidently inserted by mistake and inadvertance, and are not only repugnant, but absolutely nonsensical. They should therefore be omitted. Story on Contracts (1st ed.) § 233, and authorities, p. 151; *Cleveland* v. *Smith*, 2 Story 287; *Bosworth* v. *Sturtevant & al.*, 2 Cushing 392; Story on Contracts 171, § 248, and authorities.

Ballard was not and could not be the agent of the plaintiff, to assign the policy to himself; and omitting these words, there are apt words left to bind him, and he is bound. *Savage* v. *Rix & als.*, 9 N. H. Rep. 263; *Thatcher* v. *Howland*, 2 Metcalf 41; *Cutter* v. *Tufts*, 3 Pick. 272.

The irregularity in the recital, using the form printed by the defendants to be used in case of a mortgage of real estate, cannot defeat the intention of the parties. No recital was necessary; having mortgaged the property, it was only necessary for Ballard to transfer the policy, and this might have been done even without any writing. *Littlefield* v. *Smith*, 5 Shepley 328; *Clark* v. *Rogers*, 2 Greenleaf 143; *Jose* v. *Hardy*, 2 Greenleaf 322; *Briggs* v. *Dow*, 19 Johnson 95; *Jones* v. *Whittier*, 13 Mass. 304; *Dame* v. *Snell*, 15 Mass. 485; *Titcomb* v. *Thomas*, 5 Greenleaf 282; *Prescott* v. *Hall*, 17 Johnson 284; *Robbins* v. *Bacon*, 3 Greenleaf 349; *Onion* v. *Paul*, 1 Har. & G. 114.

II. The assignment was assented to by the defendants, in accordance with their by-laws. The policy having been transferred to the plaintiff by Ballard, and the plaintiff having furnished his guaranty note to the defendants, the matter

then stood as an application by the plaintiff for insurance upon his interest in the goods. This application was examined, approved by two of the directors, as required by the 11th article of the by-laws, and certified by the secretary. The approval of the two directors, and the certificate of the secretary, was evidence of a contract by the defendants to insure the plaintiff upon his interest in the goods, according to the terms of the policy. *Goodall* v. *New Eng. Ins. Co.*, 5 Foster's Rep. 169.

The authority of the two directors and secretary to assent is to be presumed. *Conover* v. *Mut. Ins. Co.*, 1 Comstock 290 ; *Brown* v. *Williams*, 15 Shepley 252 ; *McEvers* v. *Lawrence*, 1 Hoff., ch. 172 ; *Bodle* v. *Chenango Co.*, 2 Comstock 53 ; Angell on Insurance 249, 250, §§ 215, 216, 217.

III. The assignment of the policy by Ballard to the plaintiff, with the express consent of the defendants, as evidenced by the assent of two of the directors, and the certificate of the secretary, enables the plaintiff to maintain an action upon it, in his own name, such consent to the assignment operating as an express promise by the defendants to pay the loss to the plaintiff. This doctrine is expressly held in *Kingsley & al.* v. *New England Ins. Co.*, 8 Cush. 400, and in *Wilson* v. *Hill*, 3 Met. 68, 69. The general principle, too, is stated and sustained in 1 Parsons on Contracts 195, and note; *Crocker* v. *Whitney*, 10 Mass. 316 ; *Lynch* v. *Dalsel*, 3 Bro. P. C. (1st ed.) 497 ; *Sadlers' Company* v. *Badcock*, 2 Atkyns 554 ; Marshall on Ins. (3d ed.) 800, 801 ; *Carroll* v. *Boston Marine Ins. Co.*, 8 Mass. 515 ; *Etna Ins. Co.* v. *Tyler*, 16 Wend. 397 ; *Mowry* v. *Todd*, 12 Mass. 281 ; *Currier* v. *Hodgdon*, 3 N. H. Rep. 82 ; *Morse* v. *Bellows*, 7 N. H. Rep. 549, 565 ; *Moar* v. *Wright*, 1 Vt. 57 ; *Rollins* v. *Columbian Ins. Co.*, 5 Foster's Rep. 200 ; *Bucklin* v. *Ward*, 7 Vt. 195 ; *Hodges* v. *Eastman*, 12 Vt. 358 ; *Stiles* v. *Farrar*, 18 Vt. 444 ; *Smith* v. *Berry*, 18 Maine 122 ; *Warren* v. *Wheeler*, 21 Maine 484 ; *Bargu* v. *Collins*, 7 Har. & John. 213.

It can make no difference that there was no provision of

the charter or by-laws expressly authorizing the transfer in case of mortgage. By the rules of the common law, as modified by the decisions herein before referred to, the plaintiff having acquired an insurable interest in the subject matter of the policy, it might well be transferred to him, with the defendants' assent, so as to enable him to sustain an action in his own name, without any special provision of the charter or by-laws.

IV. The mortgage of the goods in this case was an alienation within the meaning of the 12th section of the charter and the 15th article of the by-laws of the defendants.

The mortgage was in fact a bill of sale, defeasible on the payment of the amount of a note due on demand, with a covenant by the mortgager to deliver them up to the mortgagee on demand, and possession was in fact taken upon the execution of the mortgage. The mortgager, then, actually had no legal or equitable interest in the goods, and there was, to all intents and purposes, an alienation of the property. Besides, the usage of the company had given a construction to the terms " alienation by sale or otherwise," as to assignments. Story on Contracts 161, §§ 244, 245, and authorities; also p. 162, §§ 247, 248, and authorities.

V. The assignment of the policy to the plaintiff, it being made known to the defendants, and their assent thereto, constitute a new and original promise of the defendants to the plaintiff to indemnify him to the amount of the policy, against loss or damage by fire while he retained his interest in them; and the exemption of the defendants from further liability to the mortgagee, and the guaranty note furnished by the plaintiff to the defendants, and accepted by them, are a good consideration for such promise, and constitute a new and valid contract between the defendants and the plaintiff. *Wilson* v. *Hill*, 3 Metcalf 69; *Kingsley* v. *New England Insurance Co.*, 8 Cushing 393; see, also, 1 Parsons on Contracts 195, note p.; *Ford* v. *Adams*, 2 Barb. Sup. Ct. 349; *Tibbits* v. *George*, 5 Ad. & El. 115; Angell

on Fire and Life Ins. 245, § 211, note 1, and numerous authorities there cited; also p. 246, and note 1, and authorities; *Carpenter* v. *Providence & Washington Insurance Co.*, 16 Peters 495; *Bodle* v. *Chenango Co. Mut. Ins. Co*, 2 Comstock 53.

The declaration in this case avers the plaintiff's interest in the property insured, and states the mode in which it was acquired. Angell on Insurance, § 212, p. 246 and note and authorities.

*Hibbard* and *Perley*, for the defendants.

I. In the indorsement on the policy, Ballard does not sign for himself, but for Levi Folsom, and there was no legal assignment of Ballard's interest.

II. The twelfth section of the charter does not provide for the ratification of an assignment, where goods are insured; and the same distinction is recognized between an insurance of goods and of buildings in article fifteen of the by-laws. Therefore the directors would have had no power to ratify this assignment, even if it had been founded on an absolute sale of the goods.

III. In case of a mortgage even of a house or building, and an assignment of the policy to the mortgagee, the charter does not provide for a ratification of the assignment, so as to make the mortgagee a member of the corporation, and entitle him to maintain an action in his own name; and the by-law goes no farther than the charter, and without such provision in the charter or by-laws, the assignee cannot maintain an action. *Conover* v. *Ins. Co.* 3 Den. 254; *Rollins* v. *Columbian Ins. Co.* 5 Foster's Rep. 200. In the last named case (which is decisive of this action) there was a by-law to fall back upon; but here there is none.

IV. Here was no assent of the corporation or of the directors, even supposing the charter or by-laws gave them power to assent. A majority is necessary to constitute a quorum. Angell on Corp. 460, 461. And the charter ex-

pressly provides that a majority of the whole number of directors shall constitute a quorum. § 3.

V. The contract of insurance is not in its nature assignable, and on general principles, the assent of the corporation, if it had been given, would not entitle the assignee to an action in his own name. Angell on Insurance 244, 246; *Rollins* v. *Columbian Ins. Co.*, already referred to, and cases therein cited.

VI. In mutual fire insurance companies, in order to recover on a policy, the plaintiff must be a member, and he cannot be a member unless he has complied with the charter and by-laws. *Wilson* v. *Hill*, 3 Met. 69; Angell on Ins. §§ 10, 146.

The mortgage not being an alienation, the mortgager remains a member until another is substituted in his place according to the charter and by-laws.

EASTMAN, J. The policy on which this suit was instituted was issued to Ballard on the first day of July, 1852, insuring "his stock in trade" to the amount of $1000. This stock in trade he mortgaged to the plaintiff, Folsom; and on the 11th day of August, 1852, Ballard executed the anomalous instrument on the back of the policy, stating that "having mortgaged the buildings within insured, and the land whereon they stand, &c., I hereby assign," &c.

The action was brought in the name of Folsom, the mortgagee of the goods, and the alleged assignee of the policy. There is no suggestion that the land and buildings were mortgaged. Can the suit be maintained in the name of Folsom?

We have frequently held that a mortgage of property insured is not an alienation of the same, unless there is something in the policy, charter or by-laws, which makes the mortgage work an alienation, and causes the mortgagee to become a member of the company. It was so decided in *Rollins* v. *Columbian Ins. Co.* 5 Foster's Rep. 200. And

such is the generally received doctrine of the courts. *Conover* v. *Ins. Co.* 3 Den. 254; *Lazarus* v. *Ins. Co.* 5 Pick. 81.

In. *Carpenter* v. *Providence & Washington Ins. Co.*, 16 Pet. 495, Mr. Justice *Story*, who delivered the opinion of the court, says: " Policies of insurance against fire are not deemed in their nature incidents to the property insured; but they are mere special agreements with the persons insuring against such loss or damage as they may sustain, and not the loss or damage that any other person having an interest, as grantee, or mortgagee, or creditor, or otherwise, may sustain, by reason of the subsequent destruction thereof by fire.

The owner of property may mortgage the same immediately after it is insured, and if there is nothing in the charter or by-laws requiring notice of subsequent incumbrances, it does not affect the insurance. In *Dutton* v. *New England Ins. Co.* 9 Foster's Rep. 153, we held that a mortgage made after the application for insurance, and before the issuing of the policy by the company, would not, in the absence of fraud, affect the policy.

Again : at common law a contract of insurance is not assignable, so as to give an action to the assignee in his own name. *Conover* v. *Mutual Fire Ins. Co.* 3 Den. 254; *Nevins* v. *Rockingham Mutual Fire Ins. Co.*, 5 Foster's Rep. 22, 28; *Granger* v. *Howard Ins. Co.*, 5 Wend. 200.

Like a chose in action, before a suit can be maintained in the name of the assignee, there must be a promise to him to pay the insurance; a new contract made with the assignee. *Thompson* v. *Emery*, 7 Foster's Rep. 269, and authorities there cited.

Without special provision in the charter or by-laws, whereby the assignee becomes a member of the company, the action, in case of loss, must be in the name of the insured, with whom the contract is made.

But many charters and by-laws of mutual insurance companies contain provisions for the alienees of property to

have an assignment of the policy made, and by giving security for the payment of future assessments, and otherwise complying with the rules of the company, to become members of the same, being entitled to all the privileges and incurring all the liabilities of the institution equally with other members.

In some companies there is also a provision, either in the charter or by-laws, that the mortgagee as well as a purchaser may become a member by having the assignment ratified, and giving security to pay assessments for the remaining term that the policy has to run. Such was the provision in the by-laws in the Columbian Insurance Company, as appears by the case of *Rollins* v. *Ins. Co.* 5 Foster's Rep. 200.

The true test, then, by which it is to be determined in whose name the action shall be brought, is this: is the plaintiff a member of the company? Is there any contract subsisting between him and the company, which makes him a member, entitled to all its privileges and subject to all its liabilities? Has the contract with the orignal insured ceased and a new one been made with the assignee, by which he has become a member of the company?

The provision in the policy by which the contract is made with the assured, his heirs and assigns, must be understood to be in force in accordance with the rules of law, and the charter and by-laws; and to require that the action, in case of assignment without the existence of membership by the assignee, shall be brought in the name of the assignor, does not destroy his rights under the assignment. As in the case of a chose in action, his equitable interest will be protected against all persons having notice of the assignment, although it be necessary to bring the action in the name of the assignor.

Waiving for the present the informality of the instrument of transfer in this case, and treating it as having been a regular and formal assignment made by Ballard to Folsom,

we find it to be an assignment of the policy as collateral security for the payment of the mortgage on the stock in trade. It is simply an assignment by the mortgager to the mortgagee, to secure, collaterally, the payment of the debt; "to hold as collateral security for the performance of the condition of said mortgage." That is the most that can be made of the transfer; and even then, we have to regard the statement that he had mortgaged the buildings, as intended to hâve been stated the stock of goods. But whatever the transfer conveyed, there can be no pretence that the goods, or the store, or land, had been sold, but only a mortgage executed on the goods. And the assent of the directors to the assignment was not to an absolute transfer of the policy, as provided by the charter upon a sale of property, but only to the assignment of the policy, as the transfer itself states, to be held as collateral security for the performance of the condition of the mortgage.

The ground upon which it was held in *Rollins* v. *Columbian Fire Ins. Co.* 5 Foster's Rep. 200, before referred to, that an action could be maintained by the assignee of a mortgager was, that by an express provision of a by-law of the defendants' company, the mortgagee could become a member of the company by complying with certain requisitions, as well as a purchaser. And it was said in that case that under the provisions of a charter providing for an alienation, (there being no provision in the charter in regard to mortgagees,) no action could be maintained by a mortgagee who takes an assignment of the policy, though the corporation assent to the assignment.

A company may well enough assent to the assignment of a policy as collateral security to secure the payment of a debt, without making, or choosing to make, the assignee a member. There is no inconsistency in such a proceeding. In case of loss, before the mortgage is satisfied, the money may be paid to the assignee; but on the satisfaction of the mortgage the assignment becomes null. The assignment

does not change the original contract of the parties; and a suit to recover the loss must be brought in the name of the assured, with whom the contract was made, and with whom it still exists. The company do not give up the original premium note upon such an assignment, for it is not like the transfer of a policy upon the sale of the property under the provisions of the charter, but only an assignment conditional upon the payment of the mortgage, and the original contract with the assured stands good.

Now, in this case, there is no provision whatever, either in the charter or by-laws, by which a mortgagee who has had assigned to him a policy as collateral security, becomes a member of the company. The charter and by-laws provide for no contract being made between the company and an assignee under such circumstances, and the authorities cited, particularly that of our own court, must settle the question.

But aside from this view of the case, we hardly think an action could be maintained on this policy in the name of Folsom. Supposing that the charter and by-laws would permit the assignee of a mortgager to become a member in the same manner as a purchaser, has this policy been assigned?

The difficulty as to the assignment is, that Ballard, probably meaning to assign his interest in the policy as collateral security, made an assignment by which he does not purport to assign his own interest, but uses words which represent him as the agent of Folsom. It stands on similar ground with the deed of a person who, wishing to convey his land, makes a defective conveyance. When there is a defect in the execution of a deed, the court cannot remedy it by regarding what they may suppose to have been the intention of the grantor. What does the instrument say? This is the question, and it must be answered by its language. If parol evidence were offered of the intent of the person executing an instrument, it certainly would be rejected. In

this case, we must reject the words " for Levi Folsom," before we can say that the intent of Ballard was to assign his own interest. If we reject them we make a new contract. The fact that it is necessary to reject them, shows how material the alteration would be.

The rules for the construction of deeds and other instruments, requiring them to be construed according to the meaning of the parties, do not, we think, go to the extent to which it would be necessary in order to make this a good assignment.

We might observe, further, that there is no provision in the defendants' charter or by-laws, by which a policy of insurance on a stock of goods can be assigned. Even admitting, then, that this assignment had been duly and formally drawn and executed, and the directors had legally assented to the assignment, there would seem still to remain the question whether the charter and by-laws recognize the assignment of such a policy.

We should be quite willing to sustain this action in the name of Folsom, instead of making it necessary by our decision to have another suit instituted; but we are all of opinion that it cannot be done; that the ruling of the court below was correct, and that there must be,

*Judgment on the verdict.*