CUMMINGS *v.* THE CHESHIRE COUNTY M. F. INS. CO.    { June 15, 1875.

### *Insurance—Assignment of policy.*

Insurance is a contract of indemnity, appertaining to the person or party to the contract, rather than to the property subjected to the risk against which its owner is protected.

The assent of the insurer to an assignment of a policy of insurance, upon a sale of the property named therein, constitutes a new and original promise to the assignee to indemnify him in like manner as the original insured was indemnified; and the exemption of the insurer from further liability to the vendor, and the premium already paid for insurance for a term not yet expired, are a good consideration for such promise, and constitute a new and valid contract between the insurer and the assignee.

A mutual fire insurance company insured A, "his heirs, executors, administrators, and assigns," on his dwelling-house a certain sum, and "on furniture and clothing therein" a certain other sum. During the life of the policy, A sold the real estate to B, and assigned the policy to him, with the consent of the insurers. A did not sell his furniture and clothing to B, but removed it. B took possession of the house, and placed therein his own furniture and clothing, of equal character and value, and it was burned with the house. *Held,* B may recover of the insurers the amount of the original insurance upon the furniture and clothing of A.

ASSUMPSIT, on a policy of insurance issued by the defendant to Stephen Pettigrew, dated May 11, 1868, for the term of five years ending May 11, 1873, insuring said "Pettigrew, his heirs, executors, administrators, and assigns," in the sum of $1,425, "on his buildings and other property situated in Claremont, owned and occupied by himself; that is to say,—on dwelling-house, woodshed, and carriage-house, $500; on furniture and clothing therein, $200; on provisions in said house, $100; on the east barn, $175; on hay and grain therein, $150; on south barn, $200; on hay and grain therein, $100."

The property insured was burned June 13, 1872. The land and buildings were sold by Pettigrew to Paul Cummings, the plaintiff, March 12, 1870. On the same day, Pettigrew executed the following assignment, using a printed blank upon said policy for that purpose:

"Having sold and conveyed the buildings within insured, and the land whereon they stand, to Paul Cummings, I hereby assign to him the policy of insurance within written; to hold the same, subject to all the liabilities and entitled to all the rights and privileges to which I am liable or entitled by virtue thereof.

STEPHEN PETTIGREW.

The directors consent to the above assignment.

ALBRO BLODGETT, Agent.

May 12, 1870."

Pettigrew did not sell his furniture and clothing to Cummings, but removed them ; and Cummings moved his furniture and clothing into the house : and it was Cummings's furniture and clothing that were burned.

The action was brought to recover for loss of the furniture and clothing that Cummings brought to the house. Pettigrew never owned it, nor did Cummings ever own the furniture originally insured. The plaintiff claimed that this was an insurance on the furniture and clothing that might be in the house at any time during the existence of the policy. The defendant claimed that a naked assignment of the policy, without also assigning or conveying the property insured, or some interest therein, is not a valid assignment.

The loss upon the buildings has been paid.

The action was tried by the court ; and it was agreed that, if upon the foregoing statement of facts the superior court should be of the opinion that this action can be maintained, judgment shall be rendered for the plaintiff for $157, and interest from the time the same became payable, and costs ; otherwise, judgment to be rendered for the defendant for his costs.

*Wait* and *Parker*, for the plaintiff.

*Allen* and *Wheeler*, for the defendants.

*FOSTER, C. J., C. C. What is the nature of the contract of insurance? In *Lucena* v. *Craufurd*, 2 Bos. & Pul. (N. R.) 300, Mr. Justice LAWRENCE gives precedence to the definition of Grotius in his Introduction to the Jurisprudence of Holland, published in 1631, the English translation of which definition is,—"Insurance is a contract by which the one party, in consideration of a price paid to him adequate to the risk, becomes security to the other that he shall not suffer loss, prejudice, or damage by the happening of the perils specified to certain things which may by exposed to them."

This definition commends itself to the judgment of Mr. May, " alike by its brevity, its logic, and its comprehensiveness." May on Insurance, sec. 1. These commendable qualities, however, seem to me even more conspicuous in the language of Sir Wm. Blackstone : "A policy of insurance is a contract between A and B, that, upon A's paying a premium equivalent to the hazard run, B will indemnify or insure him against a particular event." 2 Bl. Com. 458.

Insurance, then, is a contract of indemnity, and it appertains to the person or party to the contract, and not to the thing which is subjected to the risk against which its owner is protected. It is not a contract running with the land, in the case of real estate, nor running with the personalty, so to speak, in the case of a chattel interest of the insured. *Carpenter* v. *Ins. Co.*, 16 Pet. 495. " The principle of

---

* CUSHING, C. J., having been of counsel, did not sit.

indemnity," says Mr. Angell, "is the general principle which runs through the whole contract of insurance. A contract of indemnity is given to a *person* against his sustaining loss or damage, and cannot properly be called one that insures the *thing*, it not being possible so to do; and, therefore, as Lord HARDWICKE has said, it must mean insuring the person from damage; that is, damage to the *thing* or to his property." Angell on Insurance, sec. 1; May on Insurance, secs. 2, 6; 2 Bl. Com. 459; *Lucena* v. *Craufurd*, 2 Bos. & Pul. (N. R.) 300; *Sadlers Co.* v. *Badcock*, 2 Atk. 554; *Wilson* v. *Hill*, 3 Met. 66; Ellis on Insurance 1; Williams on Pers. Prop. *179; 1 Phillips on Insurance 1; *Lane* v. *Maine M. Fire Ins. Co.*, 12 Me. (3 Fairf.) 44, 49.

The original contract in this case was, that, in consideration of a sum of money advanced by Pettigrew, and his agreement to be assessed at a certain rate upon another sum, the defendants would indemnify him and his assigns against loss by fire, to the amount of $1,425, for the term of five years,—to wit, on his dwelling-house $500, on furniture and clothing therein $200, and on other property the remainder of the gross sum of $1,425. The defendants were paid for insuring the whole property during the entire period of five years; and they agreed, upon this consideration, to keep the whole property insured, whoever might during that time be its legal owner, by force of their expressed obligation to indemnify Pettigrew and his assigns.

An alienation of the property, with the consent of the defendants, was therefore contemplated and provided for by the parties to the original contract. Pettigrew sold his house, removed his furniture, and assigned the policy to Cummings (the defendants assenting thereto), who bought the house and placed therein other furniture of equal character and value. If he had sold his own furniture, or left it somewhere else, and bought the furniture of Pettigrew and retained it in the house, the defendants would unquestionably be liable for its loss. It makes no difference, in reason, equity, or common sense, whether the furniture which they were paid for insuring was bought of Stephen Pettigrew or anybody else; and I apprehend it makes no difference in law.

The contract of insurance, we have seen, does not, unless by extraordinary and express stipulation of the parties, run with the subject-matter of insurance. Satisfaction is to be made to the *person insured* for the loss he may have sustained. In fulfilment of the defendants' agreement with Pettigrew that they would insure his assigns, on the 12th of May, 1870, the defendants, in writing, signified their consent to the assignment by Pettigrew to the plaintiff of "the policy of insurance within written; to hold the same subject to all the liabilities and entitled to all the rights and privileges to which I am liable or entitled by virtue thereof." The liabilities referred to wei e, the obligation of the plaintiff to pay assessments; the rights referred to were, the rights of suit and recovery against the defendants, in case of a loss of the property co ered by the policy during the period of its existence. The assignment was of the whole policy. The obligation of

the assignee was, to pay assessments upon the whole valuation of all the property described in the policy.

The intention and contract of the defendants, in consenting to the assignment of the policy, were, to indemnify the owner for the time being,—that is, at the time of its destruction,—not for any specific furniture, but for any furniture which might be in the house during the time specified. As the plaintiff's counsel suggest,—" There can be no question but that Pettigrew might have brought in furniture and clothing not there when the policy was underwritten, and it would be covered by it. He might have replaced what he then had by this very furniture which was burned, and no question would have been made but that it was insured to him. After the premises were sold to the plaintiff and the policy assigned to him, why may he not have done the same thing and been entitled to the same benefit? The insurers are put in no worse condition; their risk was not made greater nor different."

There is, however, another aspect of this case in which the defendants' liability is very clearly apparent. The consent to Pettigrew's assignment may well be regarded as a new and independent contract made directly with the plaintiff,—an agreement to indemnify the plaintiff against loss upon *his* house and *his* furniture and clothing therein.

" If, on a transfer of the estate, the vendor assigns his policy to the purchaser, and this is made known to the insurer and is assented to by him, it constitutes a *new and original promise* to the assignee to indemnify him in like manner while he retains an interest in the estate; and the exemption of the insurer from further liability to the vendor, and the premium already paid for insurance for a term not yet expired, are a good consideration for such promise, and constitute a new and valued contract between the insurer and the assignee.

" But such undertaking will be binding, not because the policy is in any way incident to the estate or runs with the land, but in consequence of the new contract." SHAW, C. J., in *Wilson* v. *Hill*, 3 Met. 66, at page 69.

So, also, PERLEY, J., in *Rollins* v. *Ins. Co.*, 25 N. H. 207: " The assignment and assent of the corporation make a new contract, upon which * * the assignee might maintain an action in his own name; and the action in this case would be founded on this new contract made with him." And, said EASTMAN, J., in *Folsom* v. *Ins. Co.*, 30 N. H. 240, assent to the assignment is " a new contract made with the assignee."

We have therefore in the case before us a new contract, made between the parties to this suit, whereby the defendants, for a full and sufficient consideration, have undertaken to insure the plaintiff against loss by fire on the house which he bought of Pettigrew, and the furniture and clothing therein which he bought of—no matter whom.

The party insured, whether by an original policy or a supplemental contract, under the form of an assignment, must of course have an insurable interest in the property which is the subject of the contract;

but it can be of no importance to the insurer whence or how the other party acquired his title.

If these views are correct, there must be judgment for the plaintiff according to the provisions of the case transferred.

LADD, J.  The consent of the directors to the assignment of the policy by Pettigrew to the plaintiff constituted a new and original contract and promise to indemnify him according to the terms of the policy; and this new promise rested upon a sufficient consideration, namely, the exemption of the company from any further liability to Pettigrew, and the premiums already paid and secured for the unexpired term which the policy had to run.  *Wilson* v. *Hill*, 3 Met. 66.  It can hardly be claimed that, by any fair construction of the policy, the insurance was only on such furniture and clothing as was in the house, and on such hay and grain as was in the barns, at the time it was executed, so that no change therein could be made by Pettigrew.  Common experience teaches that such changes must of necessity be constantly taking place; and the contract was made in view of that fact.  The language used shows plainly enough that such changes were in contemplation of the parties.  The insurance is not " on the furniture and clothing *now* therein," but, in general terms, " on furniture and clothing therein."

It is too clear for argument that the policy would cover other furniture and clothing with which Pettigrew might replace worn out clothing and furniture that was in the house at the time it was made, or any furniture he might have therein to the amount of the insurance during the term.

It follows, conclusively as it seems to me, that, when the defendants entered into the new contract with the plaintiff, identical in its terms because evidenced by the same identical instrument, the rights of the plaintiff under that contract must be the same as were those of Pettigrew.  That being so, it was as much an insurance of his furniture and clothing as it was of the furniture and clothing of Pettigrew.

SMITH, J.  In general, at common law, where one party assigns his interest in a contract, and the other party agrees to the assignment, this constitutes a new contract between the assignee and such other original party, the terms of the original contract regulating those of the new contract.  *Fogg* v. *Insurance Company*, 10 Cush. 337.

The defendants agreed to insure Pettigrew, his heirs and assigns, " on *his* buildings, and other property situated in Claremont," &c.  Pettigrew, during the existence of the policy, sold the buildings to the plaintiff, and assigned to him the contract of insurance, and all the rights and privileges to which he was entitled by virtue thereof, and then surrendered to the plaintiff the possession of the buildings, removing his clothing and furniture.  Cummings thereupon commenced to occupy the premises with his own furniture and clothing.  The defendants assented to this assignment, and thereby entered into a

new contract with the plaintiff, the terms of which were regulated and fixed by those of the original contract,—that is, they agreed to insure him "on *his* buildings and other property situated in Claremont, &c.,—that is to say, on dwelling-house, woodshed, and carriage-house, $500; on furniture and clothing therein, $200," &c. This undertaking is not binding because the policy is incident to the property insured, but because it is a new contract. *Wilson* v. *Hill*, 3 Met. 66. The defendants were paid for insuring the full sum of $1,425 for five years, and their contract was to pay that sum to Pettigrew's assigns as well as to him. When they consented to the assignment, they agreed to insure Cummings the same as they had Pettigrew: they in fact substituted the former for the latter, and agreed that the policy should represent to him just what it had to Pettigrew. No specific furniture and clothing was named in the policy, beyond that it was such furniture and clothing of the insured as he might have in the house for the time being. If Pettigrew had not assigned the policy, and had remained in the occupation of the premises, he might have substituted other furniture for that originally insured, and no one would have questioned that it would have been covered by the policy. Any other construction would practically prevent the insurance of provisions, clothing, and family stores, as well as stocks of goods, and such property as is worn out, consumed, or otherwise changed several times during the term of a policy. If Pettigrew then could have replaced the furniture and clothing originally insured, with other property of similar character and value, without affecting his rights under the policy, there does not seem to be any reason why Cummings might not have done the same thing.

The contract was to insure him (Cummings) on *his* furniture and clothing, and it could make no difference with the defendants whether he procured his furniture of Pettigrew or of some one else. The risk was not increased, nor was it in any respect different; and, besides, there was a good consideration for this new undertaking. Cummings purchased the real estate and became the assignee of the whole policy; and having become assignee of the whole policy, and having become substituted, with the consent of the defendants, for Pettigrew, I think he is entitled to all the benefits that his assignor could claim under the policy, and could. do whatever he could do. It must follow, then, that by the new contract between these parties the defendants insured the plaintiff's furniture and clothing, and consequently

*The plaintiff is entitled to judgment, according to the finding of the court below.*