Merrimack, {
Dec. 7, 1909. }

### ANDERSON *v.* ÆTNA LIFE INSURANCE CO.

Where an accident insurance policy provides that for total disability the insured shall be entitled to a weekly indemnity and for certain specified bodily injuries shall receive fixed sums "in lieu of weekly indemnity," payment of the amount agreed upon for the accidental loss of a limb does not release the insurers from their engagement to pay the stipulated indemnity, in the event of total disability resulting from other injuries.

A clause in an accident policy, relieving the insurers from the payment of weekly indemnity if a valid claim can be made for specified injuries, cannot be construed as a waiver by the insured of all compensation for disability attributable to other injuries, especially when such an interpretation would contravene the general purpose of the contract and be inconsistent with other express provisions.

Where an accident policy provides for specified payments to the insured for surgical operations, and stipulates that "not more than one amount shall be payable for one or more operations performed as the result of one accident," the insurers are liable to one payment of the agreed sum for each of the different operations included in the schedule and necessitated by the injuries.

A suit is begun when the writ in the action is filled out, with the intention of having it served.

The fact that a writ was not served or delivered to the sheriff for service until two months after its date is evidence as to the time when and the purpose with which it was made, but is not conclusive.

ASSUMPSIT, on a policy of accident insurance. Trial by the court. Transferred from the April term, 1909, of the superior court by *Stone*, J.

The provisions of the policy relative to the amounts payable for various bodily injuries and as weekly indemnities for disability are stated in the opinion. The policy further stipulated that "no legal proceeding shall be brought . . . unless commenced within one year from the date of the alleged accident, as to death, loss of limb, or surgical operation, or within six months from the filing of claim with the company, as to total or partial disability."

The plaintiff was injured on August 31, 1906. January 15, 1907, he filed with the company notice of his injury, claim of weekly indemnity for permanent total disability, and certificate of his medical attendant as to the extent of his injuries, which contained a reference to "reamputation of crushed limbs." Payment was refused on the ground that the plaintiff was entitled to only

one fifth the principal sum, for loss of his left hand.    The writ in this action was made and dated July 8, 1907, but was not delivered to the sheriff until on or about September 9, 1907, which was the day of its service upon the defendants.

The plaintiff was engaged in the granite business and had a quarry and stone-yard in Concord.    On the day of the accident, while he was checking off stone on a platform car, a locomotive ran from the main line of the railroad upon the side-track leading to the yard and collided with the car upon which he stood.    The injuries sustained by the plaintiff as a result of the collision included loss of the left arm at the middle third by amputation, loss of the thumb and two fingers of the right hand, fractures of the nose and two ribs, severe injuries to the head, and scalding of the back and the under sides of both arms.    The plaintiff's evidence tended to show that the injuries to his head resulted in serious impairment of memory and inability to figure contracts, which continued at the date of the writ, that his disability was total within the terms of the policy during the time covered by the specification, and that the following surgical operations were performed : (1) Amputation of left hand at forearm, (2) reduction of fracture of nose, (3) reduction of fractures of ribs, and (4) amputation of fingers of right hand.

The defendants excepted to the denial of their motion for a nonsuit and to the refusal of the court to make the following rulings : (1) That the plaintiff cannot recover for weekly indemnity under the policy ; (2) that he cannot recover for surgical operations under the policy ; (3) that if he can recover for any surgical operation under the policy, he can only recover the sum of $25 for amputation of his hand.    It was agreed by the defendants that if the plaintiff was entitled to weekly indemnity for total disability, he could recover for twenty weeks in this action.

Two verdicts were found for the plaintiff : (1) A verdict for $500,—the weekly indemnity due under the policy for total disability for twenty weeks,—with interest thereon from January 15, 1907 ; (2) a verdict of $70 for surgical operations, made up in accordance with a schedule annexed to the policy, which provided that "the amounts stated shall be payable in addition to other benefits," as follows : Amputation of hand, $25 ; reduction of fracture of nose, $25 ; reduction of fractures of ribs, $10 ; amputation of fingers, $10.

*Martin & Howe (Mr. Howe* orally), for the plaintiff.

*Streeter & Hollis (Edward K. Woodworth* orally), for the defendants.

PARSONS, C. J.   The policy upon its face insures against loss of life, limbs, sight, or time, and states that the principal sum insured is $5,000 and that the weekly indemnity for total disability is $25. The plaintiff was injured during the life and within the terms of the policy, and offered evidence from which the court has drawn the inference that he was totally disabled within the meaning of the policy because of the results of the injuries proved.   There is no contention that the evidence was not legally sufficient to authorize the finding of total disability.  Why, then, should not the defendants pay the plaintiff the indemnity for total disability promised by the face of the policy ?   If the plaintiff's total disability is permanent, as it appears to be conceded it will be, he would, if he has any right to such indemnity, be entitled to weekly indemnity for 200 weeks, thus exhausting the full principal sum.  But the engagements upon the face of the policy are made " subject to the conditions and benefits printed on the following pages."

The defendants, for the purpose of escaping their apparent liability for the principal sum insured, contend that one of the " benefits " to which the plaintiff is entitled is the payment to him of one fifth the principal sum, or $1,000, for the loss of his left hand, which was one of the injuries he received; and that a correct construction of the conditions of the contract releases them, upon payment of the fixed sum for the disability produced by this injury, from their engagement to indemnify the plaintiff for the total disability actually resulting from the injuries he received.   The main controversy, therefore, is whether the plaintiff can recover the weekly indemnity of $25 stipulated in the policy, for the total disability resulting from an accident occurring during the life of the policy, or whether his recovery must be limited to the fixed sum which the policy provided should be paid for the removal of the left hand at or above the wrist. The plaintiff, standing on his policy, in this suit is necessarily bound by its provisions, and the defendants are liable only in accordance with the terms of the contract.   *Johnson* v. *Casualty Co.*, 73 N. H. 259, 260, 261, and cases cited.   This does not mean that an insured who has been fraudulently induced to enter into an unconscionable contract, or deceitfully persuaded to accept as evidence of the contract a policy which misrepresents it, has no remedy, but merely that in a suit on the policy he must accept the contract proved by the evidence which he offers.   The only question therefore is: What was the contract?

" 'In construing insurance policies courts are governed by the same general rules which are applicable to other written contracts. That is to say, it is the duty of the court to adopt that construction of the policy which, in its judgment, shall best correspond with the intention of the parties.' *Stone* v. *Insurance Co.*, 69 N. H. 438.   The

intention of the parties so found from competent evidence is the contract the court in each case is called upon to enforce." *Johnson* v. *Casualty Co.*, 73 N. H. 259, 262. The evidence from which such intention is to be found is the language of the written instrument, read in the light of the situation and general purpose of the parties. As men in general do not enter into contracts that are absurd or frivolous, or understandingly include in a written contract stipulations tending to defeat its main purpose, the inconvenience, hardship, or absurdity of one construction, or its contradiction of the general purpose of the contract, is weighty evidence that such meaning was not intended, when the language is open to a construction which is neither absurd nor frivolous, and is in agreement with the general purpose of the parties. *Sanders* v. *Insurance Co.*, 72 N. H. 485, 497, 498; *Kendall* v. *Green*, 67 N. H. 557, 562, 563. "Insurance, then, is a contract of indemnity," under which "satisfaction is to be made to the person insured, for loss he may have sustained." *Cummings* v. *Insurance Co.*, 55 N. H. 457, 458, 459.

The general purpose of the contract under consideration was therefore to indemnify the insured for loss resulting from accidental personal injury. With such end in view, it would be natural to expect that the greater the loss, the larger would be the sum payable as indemnity. Such are the main provisions of the contract. For injuries producing a partial disability, disabling the insured from the performance of one or more of the duties of his occupation, payment at the rate of $10 per week for twenty-six weeks is stipulated. For a total disability, $25 per week is agreed to be paid during the continuance of such disability, for a time sufficient to exhaust the policy. The limit, therefore, of indemnity provided for partial disability is $260, while for permanent total disability the full face of the policy, or $5,000, is payable. The policy also prescribes the sums payable for certain specified results following an injury. For loss of life, death resulting within ninety days of the injury; the loss of both hands at or above the wrists, both feet at or above the ankles, one hand and one foot at those places, or the irrecoverable loss of the sight of both eyes, the full principal sum is payable; for the similar loss of the right hand, or of either leg at or above knee, one half the principal sum is payable; for the similar removal of the left hand, or either foot at or above the ankle, one fifth that sum is payable; and for the loss of one eye, one eighth is promised. These provisions grade the payment according to the injury. The cases where the full sum is payable are cases which would ordinarily result in total permanent disability, and the policy provides for the payment of the same sum which would be called for by the stipulation as to weekly indemnity; while where a less sum is provided the cases are of a disability not permanently total,

and the effect of the provisions is to define the liability of the insurer for such disabilities, for all these provisions are "in lieu of weekly indemnity." An insured who is immediately, continuously, and wholly disabled from prosecuting any and every kind of business pertaining to his occupation for the term of 200 weeks (using the language of the policy defining a permanent total disability) has, it would be generally considered, suffered a more serious loss than one who has merely lost his left hand at the wrist; and one who suffers such permanent total disability resulting from other injuries in the same accident would incontrovertibly suffer greater loss if the removal of his left hand were added to his other injuries.

In view of the general purpose of insurance—the satisfaction of the loss—and the general provisions of this policy which have been mentioned, it would be expected that for the greater loss the policy would in all cases provide the greater recompense. But the defendants, while conceding that they would otherwise be liable to pay the plaintiff weekly indemnity for the total disability resulting to him from the injuries received, contend that because he had the misfortune to lose his left hand they are only liable to pay one fifth the amount insured. If he had been so unfortunate as to lose the sight of one eye, the same contention would reduce their liability to one eighth the principal sum. The contention is that an increase in the plaintiff's loss diminished the indemnity (called "benefit" in the policy) which the plaintiff was entitled to receive. There is no element of insurance in such a contract. Provisions in the policy by which an increase in injury should diminish the indemnity payable would not only be opposed to the general purpose of the contract of insurance, but to the general purpose of this contract as evidenced by repeated provisions contained therein. No reason is suggested why the parties should have made such an agreement. The only ground of the claim is that it is so written in the bond. This requires an examination of the portion of the policy entitled "conditions and benefits," which are contained in twenty-four numbered paragraphs.

The first paragraph, as to which no question is made, prescribes the conditions under which the policy becomes a claim; the second provides for the payment of the full principal sum in case of death within ninety days after injury; the third stipulates that the full principal sum shall be paid if the injuries result in loss of sight or limbs within ninety days; and by the fourth, one half the principal sum is to be paid for certain other loss of limbs. Paragraph 5 is the particular provision involved, and is as follows: "If such injuries alone result within ninety days in loss by removal of the left hand at or above the wrist, or either foot at or above the ankle, the insured shall be paid one fifth the principal

sum insured in lieu of weekly indemnity as herein provided, and this policy shall thereupon cease and be surrendered to the company; " or (6) if the injuries result in the same time in the irrecoverable loss of the sight of one eye, one eighth the principal sum is payable in the same way; or (7) if such injuries result in total disability, an indemnity of $25 per week is provided for 200 weeks, if total disability exists during that period. Paragraph 7 also provides for a weekly indemnity of $10 for a partial disability for a limited period.

There is nothing in these provisions as to "benefits" that supports the defendants' contention. It is to be observed that the prominent idea throughout the policy is the payment of weekly indemnity. Such is the promise on the face of the policy; and the fixed payments in paragraphs 3 to 6 inclusive are all in lieu of weekly indemnity to which the parties must have understood the insured would otherwise be entitled. Hence the company agreed to pay and the insured to receive, for the losses respectively described in each paragraph, the sums named, in place of the weekly indemnity of $25 or $10 per week to which he would otherwise be entitled. The provisions are each in the alternative. If the plaintiff's proof shows that his loss is described in any one of these paragraphs, he is entitled to the satisfaction therein provided. If in this case his proof had stopped with showing that the injuries had within ninety days resulted in the loss by removal of his left hand at the wrist, he could have recovered the sum named in paragraph 5; but he went further and brought his case within the alternative promise contained in paragraph 7, by showing that the injuries received had resulted not merely in the loss of his left hand, provided for by paragraph 5, but in a total disability. The total disability provided for by paragraph 7 is a separate and distinct loss from the loss of the left hand or foot covered by paragraph 5, as that is from the loss of a right hand or a leg covered by paragraph 4 and equally insured against.

No paragraph is found in the policy prescribing a fixed sum to be paid and received in lieu of weekly indemnity for the loss of memory and ability to figure contracts, loss of left arm and thumb and first two fingers of the right hand, fracture of nose and ribs, and scalding. The only complete description of the plaintiff's loss is found in paragraph 7, describing disability for which weekly indemnity is payable. The plaintiff is therefore entitled to recover the weekly indemnity which paragraph 7 provides, unless some other provision of the contract is found requiring an insured, who suffers any loss particularly described in paragraphs 3 to 6 inclusive, to waive all claim for compensation for other losses. The defendants claim such provision is contained in paragraph 21, the

material part of which is as follows: " In no event will claim for weekly indemnity be valid, if a valid claim for any of the amounts herein provided for specified injuries can be based upon the same accident and resulting injuries." It is of course true that an insured, who as a result of an accident within the terms of the policy had irrecoverably lost the use of his limbs and the sight of one eye, might waive all claim for the serious results of his injury and maintain a valid claim for the amount provided for the loss of an eye, as the plaintiff might, as has been suggested, have in this case confined his evidence to the loss of his arm. In the same way, one who had suffered the loss of the left hand and foot, for which he would be entitled to the principal sum under paragraph 3, might waive the loss of his foot and, proving only the loss of his left hand, establish a valid claim under paragraph 5. It would be as logical to claim in such case, that because upon payment of one fifth of the total sum for the loss of a left hand the defendants are entitled to have the policy surrendered to them under paragraph 5, therefore they are under no obligation to pay the principal sum promised for the loss sustained under paragraph 3, as it is to claim in this case that upon like payment no obligation exists for satisfaction of the loss specified in paragraph 7.

It is not probable that paragraph 21 was intended to release the defendants from the liability of paragraph 7 for the injuries there specified. Such result can be reached only by construing the provision as requiring the plaintiff to limit his proof to a portion of his loss; for in this way only can his injury be brought within the list of specified injuries for which a definite amount is fixed. Such an interpretation produces a result so foreign to the general purpose of insurance and the repeated prior provisions of the contract in suit that it is not probable the parties in entering into the contract attached such meaning to the language. Neither does such meaning attend the literal construction of the language; for while a valid claim could be made for an amount provided for a specified injury which was one of the results of the accident, the policy, as has already been seen, does not declare that any particular sum should be a satisfaction of all the loss from the injuries in this case. Consequently no valid claim for a particular amount as compensation for the plaintiff's entire loss can be made, and the paragraph relied upon has no bearing in the case. Its manifest purpose is plainly to make clear that when an insured's loss is covered by paragraphs 3 to 6, he could recover only the amounts named therein. It cannot be construed as excusing the defendants from liability for losses not described in those paragraphs, without disregarding the purpose of the parties and the

plain meaning of the language which they have used to express that purpose.

Paragraph 10 of the policy is: " If such injuries shall necessitate a surgical operation within ninety days from the date thereof, the insured shall be paid, in addition to the indemnity herein provided, the sum indicated for such operation in the schedule hereinafter contained, provided always that not more than one amount shall be payable for one or more operations performed as the result of one accident." The defendants contend that under this paragraph they agreed to pay only one of the sums named in the schedule for the different operations; or in other words, for only one if several of the different operations enumerated should be necessary as the result of one accident. If such had been the defendants' purpose in drafting the policy, they could have easily provided that payment should be made for only one operation following an accident; but the paragraph distinctly recognizes their liability for " one or more " operations and provides, not that they shall pay for only one operation, but only one amount for one or more operations. The schedule attached to the policy contains a long list of amounts payable for different operations. The amounts vary according to the nature of the operation; and if payment for only one operation was intended to be promised when several were necessary, it is probable some method would have been provided by which to determine which one of the different amounts should be paid. If the defendants are liable for only one, the policy contains nothing which makes them liable to pay for the amputation of the arm rather than for the reduction of the fracture of the nose or ribs. Which operation should be paid for could be determined only by invoking an arbitrary rule against one of the parties. But it is common knowledge that a surgical operation is not always successful in the first instance and may have to be repeated. In this case there is reference to reamputation of crushed limbs. For amputation of the arm the defendants promised to pay $50. They protected themselves by paragraph 10 from the payment of a second amount for reamputation. Similarly, they are liable to pay only once for the reduction of the fracture of the nose and ribs and for the amputation of the fingers. That is all that has been found against them. There is no error in the verdict. The defendants' refusal to pay on other grounds was a waiver of any defects in the proof of loss. *Seely* v. *Insurance Co.*, 72 N. H. 49, 54. The detailed statement of the injuries in the certificate of the attending physician accompanying the proof was notice to persons of ordinary intelligence of the necessity of surgical attention, even without the distinct reference to reamputation.

Whether the suit was commenced within one year after the accident, or within six months of the proof of loss, depended upon whether that was done which the law deems essential to the commencement of the suit. Under our practice, a suit is commenced when the writ is filled out with the intention of having it served. *Buswell* v. *Babbitt*, 65 N. H. 168, 169; *Gospel Society* v. *Whitcomb*, 2 N. H. 227, 229, 230. There was evidence that this was done within the time limited. The fact that the writ was not served or delivered to the sheriff for service until afterward is evidence on the question when and the purpose with which the writ was filled out, but it is not conclusive. The verdict for the plaintiff involves a finding that the writ was made, when it was made, with the intention of having it served, from which it follows that the suit was commenced on the date of the writ.

*Exceptions overruled.*

All concurred.