Merrimack,
March 3, 1925.

A. PERLEY FITCH COMPANY v. PHOENIX INSURANCE COMPANY.

When there is a conflict of testimony as to whether a rider attached to a policy of fire insurance, amending the policy with respect to the location of the goods insured, correctly represents the intention of the parties, the issue is for the jury.

Whether a policy-holder, by holding an amended policy for some days without protest, is to be held to have accepted it in its amended form, is a question for the jury.

ASSUMPSIT, upon a policy of fire insurance. Trial by jury. Transferred by *Branch,* J., upon the defendant's exceptions to the denial of its motions for a nonsuit and for a directed verdict, and to an order directing a verdict for the plaintiff. The facts appear in the opinion.

*Stevens, Couch & Stevens* and *Robert W. Upton* (*Mr. Upton* orally), for the plaintiff.

*Warren, Howe & Wilson* (*Mr. Howe* orally), for the defendant.

SNOW, J. The policy, issued by the defendant August 25, 1922, insured the plaintiff's stock and fixtures "while contained" in the

Optima building.  On December 21, having completed arrangements for transferring the plaintiff's business to the Statesman building, its treasurer went to the office of the defendant's agent to arrange for changes in the policy.  The evidence of the interview is conflicting.  The treasurer testified that he stated that he "intended to move" the goods from the Optima building and wanted to be "protected and covered in the new location," but that he made no request that the property be uncovered while in the Optima building. The agent understood him to say that he "had moved" and "wished to change this policy to the new location."  The only other witness, a clerk in the agent's office, testified, on direct examination, that the treasurer requested that the policy be changed "to cover on the new location," but on cross-examination admitted that he stated that "they were moving from one location to another," and "that they wanted the policy extended so that it would cover the goods as they were moved to the new location."  The policy was returned the same day to the plaintiff's office at the new location with a rider providing that "on and after date this policy will cover on goods while contained in . . . Statesman building."  The policy was accompanied by a check for one dollar and twenty-eight cents, covering the return premium due the plaintiff by reason of the lesser rate applicable to the new location.  Three days later fire destroyed the goods while contained in the Optima building.

The form of rider adopted, known as No. 22, was designed to be used under various circumstances, including cases where goods had been removed to a new location.  It could be found that it was the form usually employed when a substitution of location was intended. The agent was accustomed, when requested, however, to use another form, No. 65 (3–22), known as a "removal permit," which protected the goods in either location during the period of removal in the proportion which the value in each bore to that in both.  It provided in terms that when the goods had been removed the insurance should be transferred to the new location, and that the risk in the former location should then cease.  This form, like No. 22, provided for an additional or a return premium according to the difference in the rates applicable to the different locations.  Had form No. 65 been used, the return premium would have been a few cents less than the amount of the check of February 21, depending upon the time to be consumed in the removal.  The agent testified in substance that he assumed that all the goods had been moved, that such assumption was based more than anything else on the fact that he had seen some

goods going into the new place of business; that he would have used form No. 65 if he had understood that the goods had not been moved; that he did not intend to uncover the goods, but to cover them only in the new location; that the situation arose from a mistake or misunderstanding between him and the plaintiff's treasurer. There was evidence from which it could be found that neither the amended policy nor the check was examined by the plaintiff's treasurer or other officers, until after the fire.

It was the plaintiff's contention at the trial that the amended policy by its terms left the goods covered in both buildings, while the defendant claimed that the rider was a substitution of a new location and that therefore the amended policy by its terms uncovered the goods in the old location. Subject to the defendant's exceptions its motion for a verdict was denied, and a verdict was directed for the plaintiff on the ground that "the policy covers the loss." Each party, in argument, now seeks to justify its construction of the language of the amended policy as a conclusive inference of fact from all the competent evidence.

The position of neither party is conclusively established by the evidence. The question is, what was the contract on December 24, the day of the fire? *Anderson* v. *Insurance Company*, 75 N. H. 375, 377. There is no claim that the policy was surrendered for cancellation. Unless it was modified on December 21, its language, unaffected by the rider, determines the rights of the parties. The transaction on that day did not work a novation unless the rider recorded the intention of the parties and unless the amended policy was accepted upon the mutual understanding that it was to be substituted for the original policy. *Cutting* v. *Whittemore*, 72 N. H. 107, 108, and cases cited. Upon the testimony of the plaintiff's treasurer, and of the defendant's agent and its clerk, reasonable men might differ as to whether or not the rider represented the treasurer's request, and therefore whether or not it expressed the intention of the parties. If it were found that it did not, reasonable men might still differ upon the question whether or not the retention by the plaintiff of the policy and the check without examination for three days, while engaged in changing the location of its business, constituted an acceptance by the plaintiff. Whether or not, therefore, there was a meeting of the minds of the parties in an effective modification of the policy by an accepted amendment thereto involves questions of fact which should have been submitted to the jury.

If the rider is not an accepted part of the policy, the goods were

insured only while in the Optima building. If on the other hand the rider was an accepted part of the policy the goods were insured only while in the Statesman building. These facts must be found by the jury.

*Verdict set aside. New trial.*

All concurred.