FEDERAL LIFE INSURANCE COMPANY *v.* PHILLIPS.

4-4835

Opinion delivered December 6, 1937.

*Gerland P. Patten* and *J. H. Carmichael,* for appellant.

*Rose, Hemingway, Cantrell & Loughborough,* for appellee.

GRIFFIN SMITH, C. J. This appeal is from two judgments rendered on jury verdicts: one in favor of Lyda W. Phillips as beneficiary of a policy of insurance providing indemnity for loss of life, limb, sight, or time, by accidental means, such policy having been issued to William G. Phillips, appellee's husband; the other judgment was in favor of Lyda W. Phillips as administratrix of the William G. Phillips estate.

Appellant denied liability as to each demand. Before trial it moved the court to compel appellee to elect whether she would stand on her suit as beneficiary, or on her suit as administratrix. The motion was overruled and exceptions saved. The question was again raised when appellant requested a directed verdict, and in the alternative asked that instructions Nos. 3 and 7 be given.

The policy of insurance was issued in the principal sum of $7,500. Subdivision (a) of part one provides: "If such injury shall wholly and continuously disable the insured from date of accident from performing any act pertaining to his occupation, and during the period of such continuous disability, but within 200 weeks from date of accident, shall result independently and exclusively of all other causes in any one of the losses enumerated below, or within 90 days from the date of the accident, irrespective of total disability, result in like manner in any one of such losses, the company will pay in lieu of any other indemnity the sum set opposite such loss; but only one of the payments named in part one will be made for injuries resulting from one accident. For loss of life, the principal sum of this policy; both hands by severance at or above the wrist, the principal sum; both feet by severance at or above the ankle, the principal sum; one hand and one foot by severance at those places, the principal sum; one hand and one foot by severance as above and irrecoverable loss of sight of one eye, the principal sum; entire sight of both eyes, if irrecoverably lost, the principal sum; entire hand by severance at or above the wrist, one-half of the principal sum; entire foot by severance, at or above the ankle, one-

half of the principal sum; entire sight of one eye, if irrecoverably lost, one-half of the principal sum.''

Installment payments are made optional. Part two is as follows: ''Total and Partial Disability—Single Indemnity. Total Loss of Time. Or if such injuries, independently and exclusively of all other causes, shall wholly and continuously disable the insured from the date of accident or within fifteen days from performing any and every kind of duty pertaining to his occupation, so long as the insured lives and suffers said total disability, the company will pay, commencing with the first day of such disability, a weekly indemnity of fifty dollars.''

There is a further provision in part four, not involved in this controversy, but referred to by appellees as an illustration of inconsistent, contradictory, or ambiguous terms of the contract as a whole. Under the subtitle, ''Elective Benefits,'' part four provides: ''The insured, if he so elects in writing within twenty days from date of accident, may take, in lieu of the weekly indemnity hereinbefore provided for total and partial disability, indemnity in one sum, according to the following schedule, if the injury is one set forth in such schedule, but not more than one elective benefit shall be paid for injuries resulting from one accident. When the insured is entitled to double indemnity the elective indemnity shall be doubled in like manner. . . . For loss of one or more fingers (at least one entire phalanx), $300; of one or more entire toes, $400; for complete dislocation of the shoulder, $200; of the elbow, $200; of the wrist, $200; of the hip, $600; of the knee, $300; of any bones of foot, other than toes, $300; of the ankle, $300; of two or more toes, $100; of one or more fingers, $100; for the complete fracture of bones of the skull, both tables, $650; of the lower jaw, $150; of the collar bone, $300; of the pelvis, $500; of the thigh, $600; of the leg, $400; of the knee cap, $400; of the arm between elbow and shoulder, $600; of the forearm between wrist and elbow, $300; of two or more ribs, $300; of the foot, other than toes, $250; of the hand, other than fingers, $250; of two or more toes, $200; of two or more fingers, $200.''

Part five, relating to aviation, contains this provision: "If the insured be disabled by reason of and in consequence of an accidental injury, sustained while the insured is riding as a fare-paying passenger in any aeroplane, aquaplane or dirigible airship while being used for commercial purposes, operated by an incorporated common carrier for passenger service, provided that such air craft is operated by a licensed pilot flying upon a regular passenger route with definite schedule of departures and arrivals between established and recognized airports, the company will pay indemnity specified in part one and part two hereof."

Provision is then made for total and partial disability, and for certain elective benefits, and for double indemnity, but these are not material to this appeal.

Appellee's proof established the fact, as reflected by the jury's verdict, that the insured, on January 6, 1936, while in the lobby of a Nashville (Tennessee) hotel, accidentally slipped and struck one foot on the floor in such manner as to bruise it, and as a result infection developed and spread. Subsequent to the injury he drove to Atlanta, Ga., and on January 7 entered St. Joseph's Hospital, remaining there continuously and totally disabled until March 12, when he died.

Part eight of the policy, under the title, "Reimbursement for Hospital Charges," is: "If disability for which weekly indemnity is payable under the policy necessitates the removal of the insured to a licensed hospital within ninety days from the date of the commencement of disability, the company in addition to the weekly indemnity payable will pay, commencing with the first day, the amount expended weekly by him for said hospital charges thereafter, but not in excess of the weekly indemnity provided in the policy for total loss of time, or for a period of more than twenty weeks."

It was alleged in the complaints, and the jury found, that the insured was necessarily confined to an Atlanta hospital nine weeks; that under part two of the policy appellee as administratrix was entitled to recover $450 to compensate the estate for the insured's loss of time, and $450 to reimburse the estate for hospital charges. To

these items the court added the statutory penalty of 12 per cent., or $108, and attorneys' fees of $90.

As beneficiary, appellee secured judgment for the face value of the policy, $7,500, but elected to have payment made in monthly installments of one per cent. Eight such past-due installments were included in the jury's verdict, amounting to $600, for which judgment was given. This sum was appreciated $822—the statutory penalty amounting to $72, and attorneys' fees of $750. Interest was also computed and allowed upon the principal sums of recovery.

Evidence sustaining the jury's verdict that an accidental injury to the insured's foot totally disabled him from the day following such accident to the period of his death is of a substantial nature, and though there was a sharp conflict of testimony, the issue of liability is concluded by the verdict.

The next question is, What indemnity does the policy, by a reasonable construction of its terms, provide?

It is urged by appellees that the policy clearly states a death benefit, and a weekly indemnity, and that the weekly indemnity is collectible, at least, until settlement is made for the death benefit; that if the term "In lieu of any other indemnity," as used in part "A" of the policy, is given the meaning ascribed to it by appellant, then it is not to be reconciled with other provisions. In their brief, appellees say:

"It might with some plausibility be argued that once a payment is made under part one, then there could be no further liability under the policy as that payment would be 'in lieu of all other indemnity.' That, however, is not the situation which is now presented. Here the insured was injured on January 6. He died on March 12. Throughout the entire period he was bedridden and was entitled to weekly indemnity, 'commencing with the first day of such disability.' There is nothing in part two which states that the payment of weekly indemnity is 'in lieu of all other indemnity.' Had the indemnities been alternative it would have been natural to there repeat the phrase. In the schedule of elective benefits contained in part four we find a list of accidental injuries for which lump sum

compensation may be claimed. It is there stated that certain specified amounts may be taken in lieu of the weekly indemnity, but in the list of injuries there is no reference to the particular injuries defined in part one. It is not conceivable that had the insured actually collected the weekly indemnity during his lifetime the appellant after his death could have resisted the claim for the principal sum. Certainly there is no language in the policy which would thus enable it to escape its obligation. During the trial one of appellant's counsel was asked what would have happened if Mr. Phillips, the insured, had presented his claim during his lifetime and had received the weekly indemnity for a period of three months, and had then died. As we recall, he answered that in such a situation the amount of the weekly indemnity payments would be deducted from the principal sum payment. He could point to no policy provision authorizing such deduction. There is no answer which can be made to the question except to say that part one and part two provided for distinct indemnities which are cumulative, and that the payment of the weekly indemnity for two or three weeks will not absolve the appellant from liability for a subsequent death. To show the absurdity of appellant's argument, we may carry the illustration further and assume that after the accident, the insured had been paid weekly indemnity for one week, and had then died. Under the argument which is being presented here, the appellant would have discharged its full liability by payment of the sum of fifty dollars. It does not make any difference because the weekly indemnity was not actually paid. Liability for the indemnity accrued during the lifetime of the insured. It was payable to him, and at his death the claim passed to his administratrix. The claim for the death benefit came into existence only on the death of the insured, and belonged to the beneficiary. The policy provides in § 11 of the standard provisions that the indemnity for loss of life is payable to the beneficiary, and that all other indemnities are payable to the insured. What the phrase 'in lieu of any other indemnity' would mean in some other situation we do not know, but we are certain that here, where death followed the accrual

of liability for the weekly indemnity, it cannot be said that there is any language in the policy which would justify the court in reversing the judgment in favor of the administratrix.

"Suppose one is badly injured. Under part one if death results in two hundred weeks he is entitled to $7,500. At the end of the first week of disability he would under part two be entitled to $50. Must he stand by declining the weekly indemnity for fear that death may occur and that the acceptance of the weekly indemnity will destroy the right of his beneficiary to collect the sum of $7,500? Under appellant's theory an injured person would have to wait one hundred and fifty weeks before he could safely make a decision, otherwise he would by accepting the weekly indemnity forfeit the principal sum. If an insurer is to put out a contract like that it should be required to use language which is clear and unmistakable. A reasonable interpretation of the policy is that after payment of the principal sum no further liability would accrue, but such payment does not discharge an accrued liability under part two. This construction would give full effect to the 'in lieu of' provision and yet preserve the plain meaning of part two and avoid the preposterous result of an interpretation such as the appellant supports."

To this argument, appellant replies:

"Let us see what is the scheme, the plan of insurance exhibited by this policy. First we have payments for major accidental injuries—loss of life, both hands, both feet, arm and foot, loss of sight, one eye, etc. These losses call for the payment of all or half of the principal sum, which is $7,500. Next, we have payments for minor accidental injuries—loss of one or more fingers, toes, dislocation of shoulder, wrist, etc., fracture of jaw, collar bone, etc. These losses are indemnified by various sums, no one of which is more than $600.

"So we have what? Coverage in the first provision for a major injury that results in any of the losses mentioned in part 1. But, if the injury is minor, and does not come within the provision of part 1, then the injured party may recover under the provisions of part 2. Should

the insured become impatient and desire to be reimbursed more rapidly for rights, under part 2, he may do so by complying with the provisions of part 4.

"When this plan of coverage is envisaged the losses specifically set out in part 4 and prefaced by these words: 'The insured, if he so elect in writing within twenty days from date of accident, may take, in lieu of weekly indemnity hereinbefore provided for total and partial disability, indemnity in one sum . . . .' Part 4 must be read with part 2, and both parts 2 and 4 with regard to part 1.

"Part five, set out on pages 9 and 10 of appellee's brief, merely carry this general plan of coverage on and apply it to airplane accidents. The insurer foresaw that a plane could fall while high in the air and the crash kill all of the passengers, or that it could 'nose over' while 'taxiing' on the field, or fall before it had gained altitude. Nothing in this provision is inconsistent, unjust, inequitable, or ambiguous.

"Part eight of the policy says: 'If disability for which weekly indemnity is payable under the policy . . . .' Thus, payment under part 8 is dependent upon a right under part 2 of the policy.

"If the words are to be construed in their ordinary meaning, I know of no word or combination of words which can be more expressive than 'in lieu of any other indemnity,' nor of the word 'or' used disjunctively and to mark an alternative.

"The Greek language with its singular, dual, and plural numbers, manifold tenses, and complex case endings was the best vehicle known to man for accurate expression. And Aristotle was perhaps the clearest and most precise thinker and writer this world has ever seen. Yet the scholastics, philosophers and scientists of the middle ages and even the modern times wrote thousand upon thousands of volumes in an attempt to interpret, explain and clarify his thought. Insurers do not have Aristotles to write their contracts, nor would it avail them if they had. These contracts, written by ordinary men, must be given an interpretation in conformity to the rule announced in *Life & Casualty Insurance Com-*

*pany of Tennessee* v. *De Arman,* 192 Ark. 11, 90 S. W. 2d 206, and other decisions of this court.

"The wording of this policy is so 'ordinary' and clear, so just and equitable to the insured, and so impresses the interpretation sought by appellant upon all who read it, that counsel for appellee admitted that the arguments in support of such an interpretation are plausible. And on page 15 of their brief, we find this expression: 'A reasonable interpretation of the policy is that after payment of the principal sum no further liability would accrue, but such payment does not discharge an accrued liability under part two.'

"Try as this writer might, he cannot catch nor understand the point made by learned counsel for appellee. Do they mean to say that the right to recover under both provisions runs parallel, but after discharge of the right under part one, the right under part two automatically evaporates into thin air? Savigny, Austin, Holland and Pothier in their laborious and subtle discussions of *lex, Law, Recht, Right, Droit* and *Obligation* failed to mention or conceive of such a right, now existent, now non-existent. If the insured had a right under both provisions, a discharge of the right under one would not work a discharge of the right under the other. You either have a right, or you do not. If the appellee had a right under part two, it could not be made dependent upon a right under part one. The very subtility of counsel for appellees' statement and the difficulty in bringing it to light in order to demonstrate its absurdity, brings to mind the heavy argument and fiery polemics of Anslem and Abelard in their battles over Realism and Nominalism. Counsel for appellee would have us believe that appellee's right under part two is either running parallel and co-existent with a right under part one, born of the same accident and to die by the same act, or that appellee has a right under part one, hovering in Einstein's spatial world, awaiting the moment of discharge of same to swoop down and be extinguished and at the moment of extinguishment, also destroy a right under part two. Such an argument is, certainly, try as I have to understand it, ridiculous.

"Perhaps an illustration will better express the ridiculousness of appellee's interpretation. Suppose the insured received an accidental injury which caused the severance of both feet at or above the ankle. Under part 1, this would entitle the insured to the payment of the principal sum, $7,500. And suppose that this injury would keep the plaintiff in the hospital for some 40 or 50 weeks, but that the insurer immediately paid the principal sum due under part one. If the insurer was liable under both provisions, then under what principle of law, what rule known to us, would the insurer have a right to discontinue or refuse to make payments under part two? Viewed in the light of this illustration, the statement of counsel for appellee quoted above and about which much comment is made, resolves itself in a logical admission that the interpretation sought by appellant is the correct one.

"After all the arguments of counsel for appellant and appellee, however astute or abstruse they may be, the fact remains that the plaintiff below, the same person suing in different capacities, seeks to recover under both part one and part two of the policy. If she may do this, then the phrase 'in lieu of any other indemnity' and the disjunctive conjunction 'or,' are surplusage and must be held for naught, and the entire plan of the policy, to the writer's way of thinking, distorted and destroyed. This writer believes that the only reasonable, liberal interpretation that can be given to the plain and ordinary language of the policy is that she may recover, if entitled to recover at all, under either part one, or part two, but not under both."

It is obvious that the policy sued on is one primarily intended to indemnify the insured in the event of disability, and that payment for loss of life is only incidental to the superior purpose.

Other than the death benefit of $7,500 created in part one, certain specific disabilities are therein classified, some of which entitle the insured, as distinguished from the beneficiary, to an indemnity equal to that payable in the event of death, while others yield one-half of the principal sum. These classified benefits are optional. For example, the assured, should he suffer the loss of both

hands, or should he sustain any of the losses enumerated in subdivision "a" of part one, may immediately claim $7,500 if the elements of time and cause are present. If any such specific loss should from the date of injury wholly and continuously prevent the insured from performing any act pertaining to his occupation, his rights under part one accrue; or, if the contingency provided for did not immediately arise, but total disability attended the accident and at a period within two hundred weeks the contingency matured, then, likewise, the insured's rights under part one became fixed; or, even though total disability were not concurrent with the mishap, but within ninety days from the accident, the contingency occurred, subdivision "a" of part one applies, and the insured may claim the principal payment.

But—

The sums so provided "are payable in lieu of any other indemnity."

Turning to part two, we find a provision for total loss of time, expressed in this language: "Or if such injuries, independently and exclusively of all other causes" shall disable the insured, $50 per week will be paid "so long as the insured lives and suffers said total disability." There is the further provision in part eight relating to reimbursement for hospital expenses. Clearly, part eight is subservient to part two, and if indemnity accrues and is claimed under part two, and hospitalization has been necessary, the amount set out in part eight is payable.

Part two visualizes the insured suffering from accidentally-caused injuries of a kind not embraced in part one. They are not "specific" injuries, or combinations of circumstances, such as concurrent loss of both feet, or both hands, or one hand and one foot, etc. The injuries for which indemnity is payable under part two may be external, or internal, and if total disability occurs within the meaning of the policy, the insured may, so long as such disability continues, collect $50 per week for the remainder of his life. This will amount to $2,600 a year, or $26,000 in ten years, or $52,000 in twenty years, etc. Furthermore, if "such" total disability is inflicted from

any cause, inclusive of the contingencies (other than death) provided for in part one, the insured may elect to invoke the benefits created under part two. Having suffered the loss of both feet, or both hands, or a hand and a foot, etc., the insured may claim the indemnity of $7,500, payable in a lump sum or in installments of one per cent. per month for 120 months, and discharge the insurer; or he may speculate on his life expectancy and conclude that over a period of twenty years $52,000 at $50 per week is preferable to $7,500 in cash, or $9,000 paid at the rate of $75 per month for 120 months.

We may suppose a situation where the insured elected to accept weekly payments, and did so for 199 weeks, then died. Such payments would have amounted to $9,950. Thereupon, under the construction contended for by appellees, the effect would be that the beneficiary would be entitled to the principal sum referred to in part one—$7,500—or a total of $17,450 on a $7,500 policy. Contra, the insured, erroneously assuming his injuries not to be of a serious nature, might request payments of $50 per week under part two. In the instant case the period between accident and death was nine weeks. Assuming that a demand for weekly payments should be construed as an election, and that the contingencies provided for in part one had not arisen, the insured's recovery would be limited to $450, with no indemnity to the beneficiary, the election having fixed the rights of the parties.

Even though an injustice may seemingly arise under either theory or construction, resulting, in the first instance, is a burden upon the insurer, and in the second instance in a costly error of judgment upon the part of the insured, this is not a matter properly addressed to the court. The insured and the insurer had a right to make the contract, and its terms are not contrary to public policy. Therefore, when the insured subscribed to an insurance contract which by part one provided for certain contingencies, "payable in lieu of all other indemnities," and in the same contract the right was given to take under part two, and the benefits available under part two having been preceded by "or" a co-ordinating particle that

marks an alternative, disregard of the language used is not justified.

The judgments are reversed and the causes remanded to the circuit court with directions to permit the appellee-beneficiary to dismiss her suit as such beneficiary, in which event the judgment in her favor as administratrix is affirmed; or, in the alternative, she may dismiss her suit as administratrix, and the judgment in her favor as beneficiary will be affirmed. This may be done as to either judgment by appropriate court order and entry, and the remaining judgment will stand affirmed without further orders from this court.

BUTLER, J., dissents.