Roy J. MARTIN

v.

CONTINENTAL CASUALTY COMPANY, an Illinois Corporation.

Civ. A. No. 2338.

United States District Court
S. D. Mississippi,
Jackson Division.

Dec. 10, 1957.

Satterfield, Shell, Williams, & Buford, Jackson, Miss., for plaintiff.

Wells, Thomas & Wells, Jackson, Miss., for defendant.

BENJAMIN C. DAWKINS, Sr., District Judge.

Plaintiff's suit is upon a policy of health and accident insurance issued to him by defendant.

The Jury was waived and the case submitted upon a stipulation of facts [1] and

I.     Stipulation of Facts To Be Treated As Evidence.

"It is hereby stipulated and agreed by and between the undersigned parties, constituting both the plaintiff and the defendant, that the following facts set forth herein are true and correct as herein stated and shall be taken as admitted on the trial of this cause as fully as if competent witnesses had taken the stand and testified thereto under their proper oath, and without the necessity of further proof; and that all of such facts shall be and become a part of the record in this cause for any and all purposes; and further that the facts contained in this stipulation and those admitted by the pleadings herein shall constitute the entire record for all purposes in this cause:

"On or about the 8th day of June, 1951, the defendant, Continental Casualty Company, an Illinois Corporation, engaged in the business of writing insurance in the State of Mississippi, issued its certain accident and health insurance policy numbered 9477867 to the plaintiff, Roy J. Martin, of Durant, Mississsippi, for a valuable consideration, to-wit, initial premium and regular premium payments thereafter to be made. Under said insurance policy and upon the happening of certain contingencies, the defendant insurance company was to pay certain sums of money to the insured, Roy J. Martin, as set forth in said policy. Said insurance policy contract continued in full force and effect until on or about the 28th day of July, 1954 during which time all premium install-ments due and properly payable had been paid. A true copy of said insurance policy contract is attached as Exhibit A to the plaintiff's amended complaint which is filed in the proceeding.

"On or about the 28th day of July, 1954, at or about 11:30 P.M. and at a time when the stipulated policy was in full force and effect, the plaintiff, while in the performance of his duties as a car knocker with the Illinois Central Railroad Company, was struck and run over by a railroad train in the City of Durant, Mississippi. As a result of this accident, the plaintiff was permanently and totally injured, suffering a virtual traumatic amputation of his right leg at a point between his knee and hip, and a severe, compound comminuted fracture of the left leg at a point immediately below the knee. The plaintiff underwent immediate, severe and prolonged surgical procedures in an effort to save his right leg at the level of the traumatic amputation, but the leg could not be saved and had to be and was amputated at a point between the knee and hip during the early morning hours of July 29, 1954. As a result of the severe, compound comminuted fracture of the left leg, a large area of bone was lost, and long periods of hospitalization, treatment and numerous bone grafting procedures were followed in an effort to restore the leg, but were unsuccessful, and the left leg had to be and was amputated at a point immediately below the knee on or about the 9th day of September, 1955.

"As a further result of the afore-

admissions in the pleadings. It, therefore, involves a proper interpretation of the provisions of the policy in the light of those facts and the applicable law.

Pertinent provisions of the policy are quoted in foot note.[2]

said accident and accidental injuries, the plaintiff has continued to be, from the date of the accident, wholly, totally and continuously disabled and has been and still is at this time unable to perform each and every duty pertaining to his occupation as car knocker and each and every occupation or employment for compensation or profit. As a further incident of this accident and the accidental injuries sustained, the plaintiff has been under the regular care and treatment of competent physicians continuously since the said accident, having spent all of his time since his said injuries were sustained either in bed or in a wheel chair, or in attempting to learn to walk on artificial limbs. Artificial limbs have been prescribed, but plaintiff at this time is unable to use them successfully. The said Roy J. Martin will never be able to return to his former occupation as a railroad car knocker or work of that type.

"The defendant insurance company has heretofore tendered to plaintiff the sum of $2,350.00 (the principal sum plus the increase under Part III and surgical benefits) for the loss of plaintiff's right leg, in exchange for a complete release from the plaintiff, but plaintiff has declined, and now declines, to accept said amount on that basis."

2.      "Monthly Accident Indemnity.
"Part I
"*Indemnity provided in this part is payable only if the accident does not result in any loss for which provision is made in Part II.* No indemnity will be paid under this Part for any period of disability during which the insured is not under the regular care and attendance of a legally qualified physician or surgeon.
"A. *Total Disability. When injury shall, commencing within thirty days after the date of the accident, wholly and continuously disable and prevent the insured from performing each and every duty pertaining to his occupation, the Company will pay the Monthly Indemnity stated in the Schedule for the period the insured shall be so disabled, not to exceed twelve consecutive months. After the payment of Monthly Indemnity for twelve months as aforesaid, the Company will continue the payment of Monthly In-*

In his original complaint plaintiff alleged (in Article 7):

"That under and by virtue of the terms of said insurance policy contract, Exhibit 'A', the defendant herein *became obligated to pay unto*

*demnity so long as the insured shall live and be wholly and continuously disabled and prevented by reason of said injury from engaging in each and every occupation or employment for wage or profit.*
"B. *Partial and Delayed Total Disability.* When injury shall not wholly disable the insured commencing within thirty days after the date of the accident but shall so disable him commencing within one hundred days after the date of the accident, or shall, commencing either at once after the accident or at once after a period of total disability for which indemnity is payable under paragraph A of this Part, disable and prevent him from performing work substantially essential to the duties of his occupation, the Company will pay one-half the Monthly Indemnity stated in the Schedule for the period of such disability, not to exceed three consecutive months.

Specific Loss Accident Indemnity.
"Part II
"A. When injury shall result in loss of life of the insured *within one hundred days after the date of the accident*, the Company will pay for:
Loss of Life .......................The Principal Sum
"B. When injury does not result in loss of life of the insured *within one hundred days after the date of the accident*, but does result in any of the following losses *within said one hundred days*, the Company will pay for:
Loss of Both Feet .......Double The Principal Sum
Loss of Both Hands ......Double The Principal Sum
Loss of the Entire sight
of Both Eyes ..........Double The Principal Sum
Loss of One Hand and
One Foot ...............Double The Principal Sum
Loss of One Foot and
the Entire Sight of
One Eye ................Double The Principal Sum
Loss of One Hand and
the Entire Sight of
One Eye ................Double The Principal Sum
Loss of Either Hand ....The Principal Sum
Loss of Either Foot ....The Principal Sum
Loss of the Entire Sight
of One Eye ...........One-half the Principal Sum
Loss of Thumb and Index Finger on Either
Hand ...................One-half the Principal Sum
"When the insured shall be wholly and continuously disabled and prevented by the injury from performing each and every duty pertaining to his occupation during the entire period intervening be-

*the claimant the sum of $2,000.00 for the loss by amputation of the said right leg* of the plaintiff and further by virtue of the terms of said contract and more specifically *Part 3* thereof, in view of the fact that said contract had been in effect for a period of slightly more than three years at the time of said accident, plaintiff was entitled to an *additional $300.00* from said defendant and that in view of the fact that plaintiff was required to undergo *surgery for the amputation of the right leg, under Section 7 of said contract, the defendant became liable unto the plaintiff for an additional $50.00."* (Emphasis added.)

The paragraph thus quoted is necessarily based upon Part II of the policy under the heading "Specific Loss Accident Indemnity." Immediately following in the same article of the complaint, it is alleged:

"That in addition thereto and as provided by Part I and other related sections of said contract, in view of the fact that the plaintiff has been totally and permanently disabled and has been totally and completely incapable of performing each and every duty pertaining to his occupation from a time immediately following said accident of July 28, 1954, up to and including the date of the filing of this complaint, there has accrued unto the plaintiff the right to be paid by the defendant for a period of more than eight monthly accident indemnity benefits of $100.-00 each."

Plaintiff also alleged that notwithstanding defendant was "obligated unto the plaintiff" for the sums set forth in the two paragraphs of Article 7 of the complaint above quoted, "the said defendant * * * on or about the 13th day of October 1954" tendered plaintiff a draft for "the sum of $2,350.00" on condition that he sign a complete release for all further claims for *"any and all liabilities of the defendant herein";* that plaintiff "has refused to cash the said draft for the reason it purported to discharge defendant from all further liability for the accident", and on December 31, 1954, he "tendered back unto defendant * * * said draft * * * and requested issuance of a new draft * * * without qualifications * *" and that this was refused. He further alleged: "That plaintiff does not" again

tween the date of the accident and the occurrence of any of the above losses within said limit of time, the Company will pay the Monthly Indemnity stated in the Schedule for such period in addition to the Specific Indemnity.

" *'Loss' as above used with reference to hand or foot means complete severance through or above the wrist or ankle joint; as used with reference to the eye means the irrecoverable loss of the entire sight thereof, and, as used with reference to thumb and index finger means complete severance through or above the metacarpalphalangeal joints. No indemnity will be paid under any circumstances for more than one of the losses, the greatest, for which provision is made in this Part.*

*"The occurrence of any specific loss for which indemnity is payable under this Part shall at once terminate all insurance under this policy but such termination shall be without prejudice to any claim originating out of the accident causing such loss.*

Principal Sum Annual Increase.
"Part II

*"For each period of twelve months that this policy shall be continued in force five percent shall be added to the Principal Sum of this policy, but the total of such increases shall under no circumstances exceed fifty per cent.*

Surgical Operation Expense.
"Part VII

*"When injury or sickness shall necessitate any surgical operation named in this Part, which is performed while this policy is in force, the Company will pay the sum set opposite such operation, in addition to any other indemnity payable under this policy, but payment shall not be made for more than one operation, the greatest, as the result of any one accident or sickness;*

"Amputation of
*Thigh* .........................$75
Leg, Entire Foot, Arm,
  Forearm or Entire Hand .... 50" (All emphasis added.)

"tender to defendant said draft for the reason that it has heretofore * * * been refused by defendant."

Finally plaintiff alleged that defendant had acted " * * * maliciously, wantonly, improperly, vexatiously and without just cause * * * " in refusing "to pay said amounts of monthly indemnity" except upon the condition alleged, for which reason he "is entitled to recover punitive damages * * * in the sum of $10,000.00."

The prayer was for judgment in the sum of $13,250 or for $900 more than had been tendered, plus the punitive damages.

The original complaint was filed May 13, 1955.

After obtaining an order on June 10th extending the time to answer for an additional twenty days, defendant, on July 15th, answered admitting the first six *articles* of the complaint. It also admitted substantially the other allegations as to injuries and disability, but denied plaintiff's right to recover more than it had tendered, $2,350.

In an amended, or wholly re-drafted complaint filed April 17, 1956, plaintiff repeated his claims, substantially, but added *"as a result of the accidental injuries * * * and the loss of both legs * * * he is and * * * will continue to be wholly and totally disabled * * * for the balance and remainder of his life."* Plaintiff, therefore, claimed, under Part I of the policy: " * * * the right to be paid monthly accident indemnity * * * for 20 months * * * of $100.00 each * * * or $2,000.00 to * * * the filing of this amended complaint", increased by 5% annually for three years, plus the doctors' fee of $50.

In Article 9 of the amended petition plaintiff also again sued under Part II of the policy for the loss of his "right leg" in the sum of $2,000: and in the "alternative" alleged in Article 10, that he should "recover for either the benefits (total disability and the loss of his "right leg) * * * or for the loss of both feet * * * in the sum of $4,000.00", plus the 5% increase and doctors' bill.

Article eleven repeats the grounds for recovering punitive damages.

The prayer for this alternative demand was for the sum of $14,350, composed of "$4,000.00 for the loss of *both feet,*" doctors' bill and punitive damages.

Defendant's answer to the amendment was substantially the same as before, and plaintiff thereupon moved for summary judgment. Extensive briefs, citing many authorities were submitted by both sides, but the motion was overruled.

Boiled down, the contention of plaintiff is, that he is entitled to recover both the maximum amount under Part II for loss of his right foot, and for total and permanent disability, provided in Part I, on the theory that the injuries including the loss of parts of both legs not specifically named under Part II were major factors in rendering him totally and permanently disabled.

Plaintiff cites, among others, the following cases: Anderson v. Aetna Life Ins. Co., 75 N.H. 375, 74 A. 1051, 28 L.R.A.,N.S., 730; Nelson v. Great Northern Life Ins. Co., 253 Mich. 351, 235 N.W. 180; Caine v. Physicians' Indemnity Company of America, Mo.App., 45 S.W. 2d 904; Van Zanten v. National Casualty Company, 333 Mich. 28, 52 N.W.2d 581; Kinard v. Mutual Benefit Health & Accident Ass'n, D.C., 108 F.Supp. 780; Kangas v. Standard Accident Ins. Co., 138 Minn. 418, 165 N.W. 268, L.R.A. 1918B, 504; Federal Life Ins. Co. v. Phillips, 195 Ark. 88, 111 S.W.2d 536, 115 A. L.R. 1214; and Interstate Life & Accident Co. v. Waters, 213 Miss. 265, 56 So.2d 493.

In this last Mississippi case, the amputation of the leg was delayed beyond the thirty days provided by the policy, but the undisputed testimony of the surgeon who finally took it off was that the physical condition of the insured resulting from the injury, was such that there was grave danger of his losing his life if the operation had been performed within the thirty days. The grounds for holding plaintiff was entitled to recover, notwithstanding there was no actual sev-

erance within that period, are stated in the syllabi:

"1. Insurance

"Accident policies, like all other policies, must be given a reasonable and sensible interpretation, and where policy is subject to two interpretations equally reasonable, that which gives the greater indemnity to the insured should be adopted.

"2. Insurance

"Where accident necessitated amputation of insured's leg within 30 days of the accident, insured was entitled to recover under accident policy providing for indemnity for loss of leg within 30 days after accident, though actual amputation had to be delayed until after such period because of insured's weakened condition resulting from the accident."

In this same case, however, the court referred to and differentiated Metropolitan Casualty Ins. Co. v. Shelby, 116 Miss. 278, 76 So. 839, holding that where there was no such risk the policy had to be interpreted as written, and where "under the terms of the policy the benefits were payable only in a case where there had been an actual severance" it had to be construed as written. This, of course, has application to the alternative claim for the loss of the left foot and leg below the knee in the present case. It also differentiated Clark v. Federal Life Ins. Co.; 193 N.C. 166, 136 S.E. 291.

Defendant on the other hand, contends that, since plaintiff has demanded the maximum amount for the loss of the right leg which necessarily includes the foot, $2,000, he cannot add the *loss* of his left foot (which is defined as complete severance) because, admittedly, it was not amputated until approximately a year after the accident, not within the thirty days (Part I–A) or one hundred days (Part I–B) required by the terms of the policy; and that, under the plain language of the first sentence of Part I (A), the loss of the feet cannot be considered

in determining Total Disability or Partial or Delayed Total Disability.

We, therefore, are required to answer the question: What is the reasonable and ordinary meaning of this first sentence of Part I in the policy?

It should first be noted that the main bases of indemnity, other than for sickness, are found in Part I and II of the policy. Part I deals exclusively with "total (Part I–A) disability" for which the insured is entitled to be paid the monthly indemnity in the schedule ($100) during one year or for life if it continues; and under (I–B) "Partial and Delayed Total Disability", one-half of said amount monthly, or $50, in both instances under the conditions stated in these two subdivisions of Part I. However, in each instance, "only if the accident does not result in any loss for which provision is made in Part II."

Part II provides indemnity for *loss of life* (II–A) "The Principal Sum" and Specific Loss "when the injury *does not result in the loss of life* * * * *within one hundred days after the date of the accident*" the sums set forth specifically in the schedule which immediately follows.

In the present case, since it is admitted by both sides that injuries to the right leg required its amputation immediately or within the thirty days allowed, it is impossible to see how any one could say that the loss of a leg, which included the right foot, did not "result in any loss (the foot) for which provision is made in Part II", and therefore contributed to his "Total" or "Partial and Delayed Total Disability." The·same would be true of loss of an arm and hand, or any other member not specifically listed, but to which was attached one so listed. But it must not be forgotten that the only degrees of injury covered by Part I are (I–A) "Total Disability", or (I–B) "Partial and Delayed Total Disability." The meaning of the first needs no definition. The second, as stated in the policy, applies when he is "not wholly" disabled

"within thirty days after \* \* \* the accident" but if the injuries, "shall so (wholly) disable him \* \* \* after thirty days, but not later than one hundred days, after the accident", or "\* \* \*" commencing either at once \* \* \*" or within one hundred days after the accident and the injuries "prevent him from performing work *substantially essential to the duties of his occupation,* the company will pay *one-half* the monthly indemnity stated in the schedule for the period."

Of course, if, independently of the loss of both legs or feet, plaintiff had suffered and irreparable broken back or any other injury, which of itself alone had caused Total Permanent Disability, or Partial and Delayed Total Disability, as defined in Part I, it might plausibly have been argued that this entitled him to indemnity under both Part I and Part II, because, without the loss of one or both legs or feet, he would still have been disabled within the terms of I–A or I–B.

It is not practical to analyze the many cases from other states cited by plaintiff, but is sufficient to say most, if not all of them had distinguishing features, not present in this case.

We, therefore, feel constrained to hold that plaintiff cannot be awarded recovery under Part I without doing violence to its first sentence: "Indemnity provided in this Part *is payable only* if the accident does not result in any loss for which provision is made in Part II." Nor can Indemnity be allowed for the loss by "severance" of the left leg approximately a year after the accident, even though it is undisputed that plaintiff and his doctor hoped to save that member, which proved impossible. They took the risk and lost, hence the policy must be construed as written.

Plaintiff should recover for the loss of his right foot the Principal Sum of the policy, $2,000, increased 5% annually since the accident, and the surgical fee of $50.

Proper decree should be presented.