39 So.2d 697

### NATIONAL LIFE & ACCIDENT INS. CO.
### v. DAVIES.

#### 6 Div. 680.

Court of Appeals of Alabama.
Jan. 18, 1949.

Rehearing Denied Feb. 22, 1949.

Huey, Welch & Stone and McEniry, McEniry & McEniry, all of Bessemer, for appellant.

Lipscomb & Brobston, of Bessemer, for appellee.

CARR, Judge.

In the court below this cause was submitted on the following agreed facts:

"On March 21, 1938, the defendant issued the policy of insurance sued on in which the plaintiff is the insured and Irlean Davies is named as the beneficiary, which said policy of insurance is attached to the amended complaint as Exhibit A and is now introduced in evidence and marked plaintiff's Exhibit I and is attached hereto.

"The said policy of insurance was in full force and effect and all premiums paid thereon up to and including December 11, 1946 at which time the plaintiff, while engaged in his work as an ore miner, was injured accidentally by the fall of rocks which resulted in the amputation of a portion of each leg. The nature and extent of the plaintiff's injuries are shown by proof of loss which is introduced in evidence as plaintiff's Exhibit II and attached hereto. The proof of loss is further identified as consisting of a statement made by the plaintiff and a statement made by Dr. P. K. Thomas, Jr.

"That upon the submission of said proof of loss by the plaintiff to the defendant, the defendant accepted liability under said

policy under Paragraph C which provides for the payment of double the amount of the endowment insurance in the event of an accidental loss by severance of both feet above the ankle. The amount of endowment insurance in this case amounted to $70.00 and the · defendant duly tendered double said amount to the plaintiff in full payment of all liability under the policy which the plaintiff declined to accept.

"The plaintiff contends and refused to accept said sum offered by the defendant on the ground that he was entitled to the weekly benefits as provided under paragraph 3 of the conditions of the policy and the defendant declined to pay said weekly benefits.

"The plaintiff thereupon filed this suit against the defendant for the recovery of the weekly benefits provided under paragraph 3 of the Conditions and the defendant, upon appearing in court, made a tender and paid into court $140.70, which represents double the amount of the endowment insurance provided under paragraph C of the policy with interest thereon.

"It is agreed by the parties that the sole question presented is a construction of the policy to determine whether plaintiff's recovery is limited to paragraph C of the policy or whether the plaintiff can recover the weekly benefits provided for under paragraph 3 of the Conditions of the policy.

"In order to determine said question it is agreed that the plaintiff was totally disabled within the meaning of paragraph 3 of the Conditions from the date of the accident, namely December 11, 1946 to the date suit was filed, namely March 20, 1947, which constitutes fourteen (14) weeks. In the event the court holds that the plaintiff is entitled to recover the weekly benefits, then in this suit the plaintiff's recovery would be for fourteen weeks at $7.00 a week which would amount to $98.00. On the other hand if the plaintiff's right of recovery is limited to double the amount of the endowment. insurance provided for in paragraph C of the policy, the amount of the recovery would be $140.70 which is the amount the defendant has tendered to the plaintiff and paid into Court.

"It is further understood and agreed that in the event plaintiff recovers under paragraph 3 of the Conditions for weekly benefits for the fourteen weeks mentioned above that such shall not preclude the plaintiff from thereafter instituting suits to recover the remainder of the number of weeks to which he would be entitled to such benefits under said paragraph 3, nor would it preclude the defendant from any defenses it may have thereto.

"It is further understood that the foregoing constitutes all of the facts and evidence upon which this cause shall be submitted and the questions and issues between the parties to be decided in determining the rights and liabilities of the parties under the policy of insurance."

The proof of loss shows that both legs were amputated at places above the knees and at the junctions of the "middle and lower third of femur."

As the agreed facts stipulate, the sole question presented for our determination is whether the insurer's liability is limited to paragraph C of the policy or whether the insured can recover the weekly benefits provided for under paragraph 3 of the "Conditions" of the policy.

The trial judge gave judgment in favor of the plaintiff in consonance with the provisions of the latter paragraph.

The two indicated paragraphs are:

"(C) If the Insured shall lose, by severance, both hands at or above the wrists or both feet at or above the ankle, or one hand and one foot at or above the wrist and ankle, or permanently lose the sight of both eyes, or permanently lose the faculties of both speech and hearing; or within ninety (90) days thereafter, die as a result of accidental injuries sustained while riding as a regular passenger within any public conveyance operated for the transportation of passengers, this Policy shall thereupon mature and the Company shall pay double the amount of the Endowment Insurance shown in the Schedule on page four. The loss of one member as aforesaid shall likewise mature the Policy and the Company shall pay one-half the benefit payable for loss of two members. The payment of such sum, without deduction for

any weekly indemnity previously paid, shall terminate this Policy and fully discharge all liability thereunder."

"3. Benefits will be paid for each day that the Insured is by reason of illness necessarily confined to bed, and for each day that the Insured is by reason of accidental injury, of which there is external evidence, disabled from performing work of any nature; provided such confinement or disability is not less than four consecutive days a certificate of a duly licensed and practicing physician is furnished as hereinafter provided, such weekly benefits for disability being subject to the following limitations: Only twenty-six (26) will be paid during any twelve (12) consecutive months, or for one continuing illness or for disability from one accident; provided, however, that should this policy remain continuously in force for two full years and less than five full years the limit of benefits for one continuing illness or disability from one accident will be fifty-two (52) weeks, and provided further, that should this Policy remain continuously in force for five full years or more the limit of benefits payable for one continuing illness or disability from one accident will be seventy-eight (78) weeks; the maximum benefits payable under this Policy for one continuing illness or for one accident will be seventy-eight (78) but in no case will more than twenty-six (26) weeks be paid during any twelve consecutive months."

Appellant poses the position that a payment of the benefits under the terms of section C would preclude a recovery for total disability under the provisions of section 3. In view of certain stipulations contained in the policy and many authorities that have decided the question, there is some force and plausibility to appellant's insistence. This question, in our view, does not present the determinable factor in the case at bar. We think that a solution must be found in a correct and meaningful interpretation of the intent of the contracting parties as evidence by the language of pertinent parts of paragraph 3, supra.

As an approach to this inquiry, it is fitting that we state certain well settled principles that control in the interpretation and construction of insurance policies. This will be done without any extended discussion.

If the policy is reasonably susceptible of two constructions, and there is doubt as to the meaning, and therefore an ambiguity, the same is to be construed strictly against the insurer. Southern Ins. Co. v. Wilson, 214 Ala. 373, 108 So. 5.

In effect this is what is meant by the maxim of Lord Bacon: "All words * * * whether they be in deeds, or statutes, or otherwise, if they be general, and not express and precise, shall be restrained into the fitness of the matter and person."

" * * * insurance contracts subject to more than one construction are construed against the insurer and favorably to the insured, though the full lexicographical significance of words must be ignored." Protective Life Ins. Co. v. Hale, 230 Ala. 323, 161 So. 248, 252.

The provisions of a policy of instant concern are not to be given a narrow or a technical interpretation which would defeat the intention of the parties, but rather a rational and practical construction.

The policy should be construed according to its character and its beneficent purposes, and in the sense in which the insured had reason to suppose it was understood. It is not a question of what the words contained in the contract literally or figuratively mean, but instead what was their intended meaning when taken in connection with their use in the instrument. Vol. 12, Alabama Digest, Insurance, ☞146.

With these doctrines as a guide, we come to consider the prime inquiry.

It is to be noted that in the instant policy under the provisions of paragraph C no stipulation or provision is made for loss of legs or limbs. We are therefore faced with the task of deciding whether or not the loss of both legs by amputation above the knees is the intended equivalent of the loss of both feet by severance at or above the ankles.

Anatomically speaking, among the members of a person's body are feet, legs, limbs, and ankles.

"Foot." (1) "The extremity of the leg below the ankle; the part of the leg which treads on the ground in standing or walking, and on which the body is supported. (2) The foot consists of many bones, viz., seven bones of the tarsus (q. v.), five metatarsal bones, and the phalanges of the toes. Essentially they are homologous with those of the hand." 2 American Encyclopaedic Dict.; 1 Hand Atlas of Human Anatomy, Spalteholz, 147–151.

"Foot. The terminal part of the leg of a man or animal; that part of an animal upon which it rests when standing, or upon which it moves; in man, the pes, or part of the leg below the ankle joint or tibiotarsal articulation; that portion of the leg below the ankle joint; a part of the support of the human body, and, when used in connection with the rest of the leg as a means of locomotion, essentially a part of the leg; the human foot has been held to embrace the arch. In a broader sense, the base, bottom, or foundation of anything; the end or termination." 36 C.J.S., page 1130.

"Leg." "1. A limb or member of an animal used for supporting the body, and in running, climbing, or swimming; sometimes, specif., that part of the limb between the knee and foot." Webster's New International Dictionary.

"Limb." "2. A leg or arm of a human being; a leg, arm, or wing of an animal; sometimes, in affected or prudish use, specif., the leg of a person." Webster's New International Dictionary.

"Ankle." "1. The joint between the foot and the leg, corresponding to the wrist in the arm, the hock of a horse, and what is often, incorrectly, called the knee of a bird. In man it is a ginglymus joint between the tibia and fibula and the astragalus." Webster's New International Dictionary.

In Kangas v. Standard Acc. Ins. Co., 138 Minn. 418, 165 N.W. 268, 269, L.R.A. 1918B, 504, the insured sustained an accidental injury which necessitated the amputation of all the fingers of his right hand and the left arm near the shoulder. Part II of his policy stipulated specific benefits for loss of one hand by complete severance at or above the wrist and also benefits for the loss of both hands in the same manner. Part III of the contract provided for total disability benefits. The court posed this determinable factor: "The decisive question is, Did the total disability give rise to a monthly accident indemnity, within the meaning of the policy, or is the plaintiff limited to an indemnity for the specific loss of his left hand, under the provisions of part II of the policy?"

In response the Supreme Court of Minnesota observed: "The difficulty with this contention is that in the case at bar *the loss is the entire left arm* and the fingers of the right hand, and we fail to discover, under the head of specific losses, any reference to such a loss." (Emphasis ours.)

The Michigan Supreme Court in Nelson v. Great Northern Life Ins. Co., 253 Mich. 351, 235 N.W. 180, had under review the construction of a policy somewhat similar in its terms. The determinable question revolved around the interpretation and meaning of this language: "Loss shall mean, with regard to hands and feet, dismemberment by severance at or above the wrist or ankle joint."

The court held: "Counsel disagree as to the meaning to be given to the word 'above.' It is claimed by counsel for the defendant that it refers to any place between the wrist and shoulder, from which he concludes that the severance of plaintiff's arm two and one-half inches above the elbow joint constitutes the loss of a hand. The question is not what the word literally or figuratively means, but what was it intended to mean in the connection in which it was used in the policy. It was used in connection with the wrist joint, and it is very apparent that, in so using it, the insurer intended to convey the idea that the wrist joint must be included in the severance, or there could be no recovery for the loss of a hand. Above the wrist is here meant just far enough above to include the joint in the severance. It is not meant that severance at the shoulder or above the elbow would constitute the loss of a hand. We think the words used fair-

ly express the purpose of the insurer, which was, to limit its liability to the loss of a hand severed in such a way as to include the wrist."

By logical analogy and deduction it would follow that this court would hold that a severance above the knee joint was not intended to convey the equivalent meaning of a severance of the foot at or above the ankle.

In the case of National Casualty Co. v. Birt, 104 Ind.App., 424, 11 N.E.2d 505, 507, the policy under review made provision for a specific amount in the event of loss of either foot. It appears that prior to the issuance date of the policy the insured had suffered an amputation of his left leg at about half-way between the ankle and knee joints. During the life of the policy he sustained an additional accidental injury to this same leg. As a result of the accident, it was necessary to amputate the remaining portion at a place about five inches above the knee.

In reply to the question of whether or not the insured could recover under the total disability clause and not be confined solely to the benefits under the special loss clause, the court observed: "There was then a provision defining what was meant by 'loss.' So far as applicable here it was *in every case referred to in this policy, the loss of any member of (or) members shall mean loss by severance at or above the ankle or wrist joints.* This is probably the crucial clause of the policy. The inquiry then is: What is its meaning? Our interpretation is that the word 'member' as here used can refer but to those members that have been referred to prior thereto in the policy. The only 'members' mentioned before as applicable here are 'hands' and 'feet.' Using this interpretation and giving to the language its plain and ordinary meaning, it is apparent that the contract provided that loss should mean the loss of any member theretofore mentioned namely hands or feet (because they are the only ones referred to in the policy) at or above the ankle or wrist joints. Any other interpretation would necessitate using words in other than their plain and ordinary meaning."

Somewhat analogous in the instant policy is paragraph C, which refers to: "The loss of one *member* as aforesaid shall likewise mature the Policy and the Company shall pay one-half the benefit payable for loss of two *members*." (Emphasis ours.) We have here a designation of the enumerated parts of the body as *members*.

The Kansas City Court of Appeals in Kennedy v. National Accident & Health Co., Mo.App., 76 S.W.2d 748, held that an amputation of the right foot between the knee and the ankle came within the terms of the specific loss clause of the policy which indemnified against the loss of a foot by severance at or above the ankle. The facts in this case are dissimilar to those in the case at bar. Clearly, for this reason, it is not controlling as an authority. Whether or not we would follow the holding under similar facts we will not here decide. It is to be noted that the opinion is not written by a court of last resort.

We are not in accord with the view expressed by the majority of the members of the Supreme Court of Appeals of West Virginia in Bates v. Inter-Ocean Casualty Co., 126 W.Va. 620, 29 S.E.2d 469, 471. There it was held that an amputation of the leg four inches above the knee was within the intent and purview of the description of the loss of the foot by severance at or above the ankle joint.

The minority entertained a contrary view, and we think correctly so. Judge Fox in his dissenting opinion wrote: "I take this position because I think it settled law that the policy in question should be construed most strongly in favor of the insured plaintiff. I agree that if there were simply a loss of one foot the insured could only collect the specific sum provided for that injury, and could not recover any sum by way of alternative claim, under Part II quoted above, covering weekly accident indemnity; but I do not think that the provision quoted above, with respect to severance at or above the wrist joint or ankle joint, was intended to, or does, mean that the injury which the plaintiff sustained is covered by the schedule of 'Specific Losses' mentioned above."

296

■ Under the provisions of the policy in question it is not made sure what is meant by the use of the word "above". To take it literally, of course, it could include a severance even at the hip joint. But we are enjoined against a technical or literal construction of the language of the policy. It is clear that in its common, accepted meaning and use we do not speak of the portion of the leg above the ankle as the foot.

To hold that severance of both legs above the knee joints should be taken to mean only the loss of the feet would in effect destroy to a great extent some of the beneficent benefits of the policy. If the contracting parties had intended or contemplated that the description of the member should be so included, this could have been done by a more specific description or explanation.

We are in accord with the view of the trial judge, and order that his judgment be affirmed.

Affirmed.

### On Rehearing

In brief on application for rehearing counsel states: "The Court here, in order that the insured might receive the weekly benefits which will probably exceed the amount to be paid for the loss of both feet, has unconsciously destroyed the coverage now held by thousands of people in the State who have policies which contain the same provision as designated in the policy sued on as Section C. In many of these policies there will not be any other provisions under which they can receive any benefits, so, they will lose all, because of this decision."

We certainly did not intend that our original opinion should invite such dire distress.

■ We are here concerned with the task of determining which of two provisions of the policy is to be applied. Both are contained in the contract and were purposely incorporated therein. Each should be read and construed in connection with the other, and both should be given a field of application, in consonance with established proof.

One of the paragraphs has to do with specific loss of members and this without regard to total disability. The other relates to illness and accident with regard to total disability.

Some courts have gone so far as to declare that if the insured is totally disabled this determines the matter and his benefits are referable to the provision of the policy which provides for total disability. We are not in accord with this extreme view. In some cases, the specific loss clause would have to be entirely ignored and therefore be without purposeful application.

If the insured in the case at bar had lost both feet only, his benefits would be awarded under the terms of paragraph C. The question of total disability would not enter as a determinable factor.

If the policy had contained only the specific loss clause, the intent of the parties would have been directed there.

With the inclusion of the other paragraph, we are not authorized to expunge it from the contract and declare that it has no purposeful meaning if the facts warrant a contrary view.

Appellant cites Goldstein v. Standard Accident Ins. Co., 236 N.Y. 178, 140 N.E. 235, and Hill v. National Life & Accident Ins. Co., La.App., 160 So. 312. The insured in each of these cases lost the sight of his eye or eyes. The injury, therefore, came within the actual designation of the specific loss clause. It is to be noted that in the former case the policy provisions are not similar to those in the case at bar. In any event, our view is not out of harmony with these authorities.

To take an extreme example: Suppose the insured had lost by severance both legs at the hip joints and both arms at the shoulder joints, and thereby became a "basket case." To adhere to the position of the appellant, we would be compelled to hold that his benefits would be referable to the specific loss clause because he suffered the loss of both feet and both hands above the ankles and wrists. We do not think the policy warrants so literal a construction.

The application for rehearing is overruled.