92 So.2d 924

## LIBERTY NATIONAL LIFE INSURANCE COMPANY

v.

### Buford STRINGFELLOW.

6 Div. 267.

Court of Appeals of Alabama.

Oct. 16, 1956.

Rehearing Denied Nov. 13, 1956.

Lipscomb, Brobston, Jones & Brobston, Bessemer, for appellee.

Lange, Simpson, Robinson & Somerville, Birmingham, and Huey, Stone & Patton, Bessemer, for appellant.

HARWOOD, Presiding Judge.

This cause was submitted to the jury upon count 2 of the complaint which was as follows:

"Plaintiff claims of the defendant, Liberty National Life Insurance Company, a Corporation, the sum of Fifty Thousand Dollars ($50,000.00) damages, for that on, to-wit: prior to the 1st day of January, 1953, the defendant entered into a contract of burial insurance with plaintiff's wife, Sadie Stringfellow, whereby the defendant for a valuable consideration, promised, that upon the death of plaintiff's wife, Sadie Stringfellow, said defendant would furnish plaintiff, as beneficiary of said policy, a 12-guage copper steel vault for the burial of said deceased wife; and on, to-wit: the first day of January, 1953, the said Sadie Stringfellow, plaintiff's wife, died; and on, to-wit: the 3rd day of January, 1953, the defendant had the custody of the remains of his deceased wife, for burial; and on said date said contract of burial insurance was in full force and effect, and although on said date all the terms and conditions of said contract had been performed by the insured, plaintiff's deceased wife, the defendant on said date breached the said contract on its part in that the defendant failed and refused to provide said copper steel vault, and on the contrary provided only a concrete vault for the burial of plaintiff's deceased wife, and plaintiff not being able to obtain the said copper steel vault as aforesaid was forced to permit the body of his said deceased wife to be placed in the said concrete vault, in which vault the said body was buried against the protestations of plaintiff, and as a proximate consequence of defendant's said breach of said contract of burial insurance, the plaintiff suffered great humiliation, chagrin, and mental anguish and suffering, and his feelings were shocked and outraged, and plaintiff was made sick; wherefore plaintiff sues as beneficiary of said policy, and plaintiff claims damages as aforesaid."

Demurrer to the complaint being overruled, issue was joined on defendant's plea, in short, by consent, etc.

A verdict in favor of the plaintiff was returned by the jury, damages being assessed at $1,000.

Judgment was entered pursuant to the verdict, and defendant's motion for a new trial being overruled, an appeal was perfected to this court.

The policy sued on was a vault policy, and among other things, provided that the defendant, (appellant):

"Will upon receipt of satisfactory proof of the death of the insured and the surrender of this policy provide, subject to the terms and conditions of this policy, a steel vault for the insured of the retail value shown in the schedule, or a concrete vault as stipulated herein."

\*    \*    \*    \*    \*    \*

"3 A.    The Company agrees to furnish for the burial of the insured a *12 gauge copper steel vault of the retail value of $100.00*. At the option of the beneficiary named herein *a concrete vault made of No. 1 cement* will be furnished in lieu of said copper steel vault."

The plaintiff, and Mrs. Jim Allene Snow, Mrs. Princella Stokes, and Mrs. Oma Jones were witnesses for the plaintiff.

The appellee, as a witness in his own behalf, testified to the effect that Sadie Stringfellow, his deceased wife, was, at the time of her death, the owner of a burial policy and a burial vault policy issued by the appellant company.

On the day of her death the appellee, accompanied by the three ladies above

mentioned went to the Brown Service Funeral Home in Bessemer to arrange for the burial of Mrs. Stringfellow.

It was agreed that the funeral home was authorized to act for the appellant in such matters.

Mr. Ivy Gwin, an employee of the funeral home, accepted the policies and assisted in the selection of a casket.

As to the burial vault, the appellee testified that he was not shown a steel vault, but only two miniature vaults and was told that one was a sample concrete vault, and the other a sample steel vault. Upon requesting a steel vault the appellee was informed by Mr. Gwin that he would have to take the concrete vault as called for in the policy, and that a steel vault would be sixty dollars extra. Appellee was unable to provide a steel vault under these conditions and, his wife was buried in a concrete vault.

The three ladies who accompanied appellee to the funeral home testified to substantially the same facts as did appellee.

For the appellant Mr. Gwin testified that upon appellee's visit to the funeral home, accompanied by the ladies, they were shown two miniature concrete vaults, one of better quality than the other, and also a regular steel vault.

The appellee selected the better quality concrete vault. This higher quality concrete vault was not called for by the policy, and he informed the appellee that a vault of this quality would cost sixty dollars more, and that the policy called for the cheaper vault. The appellee thereupon selected the concrete vault called for by the policy.

At the outset of the trial the appellant made a motion to strike, separately and severally, various allegations in the complaint, including the allegations as to injuries sustained. The court granted the motion to strike, except as to the claim for damages for mental suffering. The effect of this ruling was to eliminate all claims for damages except for mental suffering.

To this ruling the appellant duly excepted.

The appellee's claim in this case is for damages for breach of the vault insurance policy, and he claims in his capacity as beneficiary.

Among the assignments of error specified and argued several raise the point that the lower court erred in overruling the demurrer to the complaint, in denying appellant's motion to strike from the complaint the claim for damages for mental suffering, and denying its motion for a new trial.

■ The general rule as to damages for breach of a contract is that only those damages are recoverable which are the natural and probable result of the breach of the contract, and could be reasonably contemplated by the parties as a probable result of the breach. McMillian Lumber Co. v. First Nat. Bank of Eutaw, 215 Ala. 379, 110 So. 602; Nashville C. & St. L. Ry. Co. v. Campbell, 212 Ala. 27, 101 So. 615.

■ It is further a basic principle of law governing the liability of an insurer that such liability is to be determined by the provisions of the insurance contract.

Further, Section 62, Title 9, Code of Alabama 1940, provides:

"All contracts, express or implied, for the payment of money, or other thing, or for the performance of any act or duty, bear interest from the day such money, or thing, estimating it at its money value, should have been paid, or such act, estimating the compensation therefore in money performed."

■ The contract of insurance in this case called for the payment of a thing of specified value, i. e., a value of $100. The

extent of recovery is therefore governed by the above code section.

The appellee contends however that the doctrine developed in our so called telegraph cases, to the effect that damages for mental suffering may be recovered in an action ex contractu for failure to transmit or deliver a telegram, should apply by analogy to the claim in this case.

The rule of these cases is however to the effect that a sendee of a telegram cannot sue ex contractu for breach of the contract to transmit unless he was a party to the contract, directly or through an agent, or unless the contract was made for his sole benefit. McGehee v. Western Union Tel. Co., 169 Ala. 109, 53 So. 205; Ford v. Postal Telegraph Co., 124 Ala. 400, 27 So. 409; Western Union Tel. Co. v. Heathcoat, 149 Ala. 623, 43 So. 117.

■ The sendee of a telegram is a third party beneficiary, as is the beneficiary under an insurance contract.

The complaint fails to allege that the appellee was a party to the contract directly or through an agent, and construing the count most strongly against the pleader, it also fails to allege that the contract was for his sole benefit, but avers that the vault was to be furnished for the burial of the insured. As stated by Bouldin, J., in Jordan's Mut. Aid Ass'n. v. Edwards, 232 Ala. 80, 166 So. 780, such policy imposes a "moral burden" on the beneficiary to see to the execution of the contract. Actually there is no material benefit to the beneficiary, and the purpose of such insurance is to provide a proper burial.

The court therefore erred in overruling the demurrers to the complaint.

It necessarily follows that the court likewise erred in denying appellant's request for the affirmative charge under the evidence submitted, and in denying its motion for a new trial.

The court likewise erred in overruling appellant's motion to strike from the complaint appellee's claim for damages for mental suffering.

In Jefferson County Burial Soc., v. Curry, 237 Ala. 548, 187 So. 723, the plaintiff, as beneficiary, had sued in assumpsit for breach of a contract of burial insurance. The defendant burial society had refused to furnish any services, claiming the policy was not in force. The amount of damages claimed was the value of the services as set forth in the policy, i. e. $200. However, a claim for mental suffering was also included in the catalogue of damages incurred. The court stated: "Upon a breach she is entitled to recover damages not exceeding the stipulated value of the services."

Several other points are argued by counsel for appellant as constituting error. We pretermit consideration of them in view of the conclusions already reached.

Reversed and remanded.