119 So.2d 190

UNITED SECURITY LIFE INSURANCE COMPANY

v.

John B. KELLEY.

2 Div. 20.

Court of Appeals of Alabama.

Oct. 13, 1959.

Rehearing Denied Nov. 10, 1959.

486

Brobston, Jones & Brobston and W. E. Brobston, Bessemer, for appellee.

S. P. Keith, Jr., Birmingham, for appellant.

CATES, Judge.

United Security appeals from a nonjury judgment in the amount of $756 upon an accident insurance policy. The accident happened October 1, 1957, when Mr. Kelley was hurt in a coal mine while trying to head off a runaway trip of mine cars.

Aside from the propriety of certain questions and answers accepted by the court, this appeal mainly hinges on whether or not a man insured under an accident indemnity policy who loses a leg is due total disability benefits where the policy calls for another specific but lesser benefit for the loss of a limb.

No certificate of service of the assignments of error on appellee is in the record. But Kelley, by not moving to dismiss, has waived this omission. Edge v. Bice, 263 Ala. 273, 82 So.2d 252.

The insuring clause provides indemnity "against loss of limb, sight or time." [1] The two pertinent benefit schedules are: (1) Section A calls for $45 a month (up to $270) where, within thirty days, the injury causes the loss of one leg; (2) Section B provides $90 a month (up to $1,080 in all) for continuous total disability.

Kelley's brief controverts United Security's statement of the facts, e. g., United Security's brief says Dr. Herrod, a surgeon, treated Mr. Kelley during forty days, but it leaves out the details of the treatment.

The main medical facts from the record follow:

"A. Mr. Kelley was in shock; and was given blood—the amount I don't remember, one or two bottles; and the blood pressure was stabilized; and he was taken to surgery; and because of the severity of the injury and loss of blood supply to his foot, the foot was beginning to turn dark and cold.

---

1. Pertinent parts of Kelley's policy are:
"This Policy Provides Indemnity for Loss of Limb, Sight or Time by Accidental Means as herein Limited and Provided
* * *
"Against Loss Of Limb, Sight Or Time, Resulting Directly Or Indirectly of all other causes from bodily injury sustained during any term of this Policy through purely accidental means, herein referred to as 'such injury', the cause of which originates after the effective date of this Policy, subject respectively, however, to all the provisions and limitations hereinafter contained.
*     *     *     *     *
"Section 'A' Specific Losses
"The 'Company' will pay to the 'insured' indemnity at the rate and up to the maximum provided by the foregoing Section 'B' if 'such injury' results in the loss to the 'insured' of any two limbs or the entire and irrecoverable loss of sight of both eyes within thirty days from the date of the accident, or the 'Company' will pay one-half the rate of monthly benefit, not to exceed one-fourth the maximum provided for in the foregoing Section 'B' if 'such injury' results in loss to the 'insured' of any one limb within thirty days from the date of the accident. Loss of limb or limbs shall mean dismemberment by severance through or above the wrist or ankle joints. *Payment of benefits under this Section shall be in lieu of all other benefits under this policy.*
"Section 'B' Accidental Total Disability
"The 'Company' will pay $90.00 Per Month beginning with the First Day that the 'insured' is continuously and totally disabled solely by reason of 'such injury' and prevented thereby from performing each and every duty pertaining to any business or occupation and provided the 'insured' requires and receives regular personal treatments of a qualified physician or surgeon. The total of the monthly indemnity payments payable under this section shall not exceed the maximum hereinabove stated." (Italics supplied.)
We have not gone into the implications of "directly or indirectly" instead of the usual "directly and independently."

"Q. Would that indicate gangrene? A. No, not that early. It was too early for that. But it indicated no blood getting down there. We decided to amputate; and amputated his leg some five or six inches below the knee. Then he was put in bed in a pelvic sling. A pelvic sling is just what it states, a sling the patient sits in, with traction going up to a pulley, going down to the foot of the bed, with weights, just enough to keep the patient's body just off the bed or just touching the bed. The purpose is to exert pressure on either side of the pelvis, trying to push the bones together that are separated.

"Q. How long did Mr. Kelley remain in traction in a pelvic sling? A. Approximately six weeks.

"Q. How long after that did he remain in the hospital? A. He was in the hospital about forty days.

"Q. Now, did—was there complete, were the bones put back exactly in place and knitted in place? A. No."

Dr. Herrod stated that Mr. Kelley's disability prevented him from performing "any serious physical labor," for a year from the time of the accident.

We quote from appellee's brief:

"The appellee * * * is forty-six years of age and went only to the seventh grade in school and has been a miner for thirty years and has done no work other than in underground mines and never worked in any trade or profession, had no training other than the seventh grade education and never operated a business and had no funds to operate a business, that he had no investments and no income or means of income other than manual labor. * * *"

National Life & Accident Ins. Co. v. Davies, 34 Ala.App. 290, 39 So.2d 697, involved facts some of which differ from those here:

| | | Davies | Kelley |
|---|---|---|---|
| 1. | Accident | Rock fall | Run over by mine car |
| 2. | Specific loss clause | "Both feet" | "Limb" |
| 3. | Specific loss | Legs (amputation needed) | Leg (amputation needed) |
| 4. | Total disability | From legs alone | From leg and broken pelvis |

The Davies case follows the reasoning of Kangas v. Standard Acc. Ins. Co., 138 Minn. 418, 165 N.W. 268, L.R.A.1918B, 504, i. e., both courts put a strict construction on the specific loss clause, in that the loss of a limb (i. e., in Davies the leg, in Kangas the arm) does not include—for the purposes of the policy—the lesser included dependent member, i. e., in Davies the foot, in Kangas the hand.

The loss of Kelley's leg between the ankle and the knee is the loss of a "limb" under his policy. If this were the only result of the injury, there might be doubt as to the disability clause operating.

Since there was evidence that the combination, loss of leg and pelvic fractures, resulted in total disability for a year, the trial judge could make a valid finding for Kelley, certainly to the time of filing. See Kinard v. Mutual Benefit Health & Acc. Ass'n, D.C., 108 F.Supp. 780, and cases therein cited, particularly Rabb v. North American Acc. Ins. Co., 28 Idaho 321, 154 P. 493.

In the Kinard case, supra, we find (108 F.Supp. at page 788):

"The provision in the policy that recovery for the loss of an eye (or other specific losses) 'shall be in lieu of all other indemnity,' means that the indemnity thus provided is the only amount which can be recovered for disability resulting from the loss of one eye. This provision is not a limitation of recovery for other wholly and con-

tinuously disabling injuries to other parts of the body, although received in the accident."

Kelley's policy had no proviso to exclude from the total disability clause injuries which also resulted in the loss of a limb.[2] Hence, loss of the leg and total disability were not mutually exclusive where pelvic fracture was a substantial factor of the disability.

■ Assignments 4, 5, 6, 7, 8, 9 and 10 are argued seriatim in brief with a single argument, to which reference is made, under the heading designated by each numbered assignment, e. g.:

"Assignment of Error No. 5

"Appellant here adopts in support of this assignment of error all that has been set forth under the argument of Assignment of Error No. 4."

At least one common thread runs through these claimed errors. Hence, we can review within the scope of the common point. Christian v. Fidelity & Cas. Co. of N. Y., 264 Ala. 616, 88 So.2d 840. Cf. Stiles v. Lambert, 39 Ala.App. 15, 94 So.2d 784, where unlike assignments could not be argued by reference.

■ The common argument relates to the rule in Equitable Life Assurance Soc. of United States v. Davis, 231 Ala. 261, 164 So. 86, and in Volunteer State Life Ins. Co. v. Davis, 31 Ala.App. 167, 14 So.2d 162, which does not permit medical testimony on a matter of common knowledge because it impinges on the function of the jury to decide the ultimate issue. See Alabama Great So. R. Co. v. Bishop, 265 Ala. 118, 89 So.2d 738, 64 A.L.R.2d 1190.

Equitable Life Assurance Soc. of United States v. Davis, supra [231 Ala. 261, 164 So. 87], involved a total and permanent disability clause in a group life policy. The offending question asked the physician was:

"* * * will you tell * * * whether or not, medically speaking, that man's condition is such that he can do manual labor?"

Bouldin, J., speaking for the court, said:

"* * * So, when the sole permanent disability according to his [the physician-expert's] testimony, consists in the loss of the use of one arm, any opinion on his part that such injury works a total disability to do profitable manual labor by one accustomed to such labor should not be received, although the witness claims to speak with professional knowledge."

Volunteer State Life Ins. Co. v. Davis, supra [31 Ala.App. 167, 14 So.2d 166], held it was not error to sustain an objection to a question as to whether the medical witness himself was capable of deciding whether Davis was totally and permanently disabled "within the terms" of the policy. This was asking the witness as to his own expertness, which vice we should suppose sufficient to support the ruling. Bricken, P. J., preferred, however, to rest his reasoning on the usurpation concept.

The contrast between Travis v. Louisville & N. R. Co., 183 Ala. 415, 62 So. 851, and Birmingham News Co. v. Payne, 230 Ala. 524, 162 So. 116, illustrates the positive and negative poles of the idea of usurpation by an expert.

Thus, in Travis we find de Graffenried, J., saying [183 Ala. 415, 62 So. 855]:

"* * * It was for the jury, and not for the witness, to say whether spoiled oysters caused the sickness. Dr. Burnham might well have testified that spoiled oysters could have produced the plaintiff's sickness, but it was *not* for him to say that the sickness was caused by spoiled oysters. The question as to whether the oysters were spoiled was a disputed issue of fact."

2. Contrast the first sentence in Part I of the policy set forth in Martin v. Continental Cas. Co., D.C., 157 F.Supp. 259, 261, note 2. See also Goldstein v. Standard Acc. Ins. Co., 236 N.Y. 178, 140 N.E. 235.

From Payne, we excerpt [230 Ala. 524, 162 So. 120]:

"Dr. Donald, a witness for plaintiff, was asked: 'Q. Doctor, what is your judgment as a physician and surgeon, and based on the facts in this case as you have stated them to the jury, as to the cause of her present condition that you find her in at this time?'

"To which he answered: 'A. Came from the injury.'

"This question and answer do not come within the influence of Travis v. Louisville & N. R. Co., * * *. In the instant case, there was no dispute about the injury; the only question of inquiry being whether that injury created the condition or mental state which extended to and existed at the time of the trial. This was sought to be testified to (after a proper predicate) by a medical expert with full knowledge of the facts. * * *"

In the instant case, for Dr. Herrod, who had illustrated his testimony with X-ray pictures of both the leg break and the pelvic fractures, to be asked as to Kelley's continuous total disability was asking about a latent condition not readily susceptible of everyday observation, and, therefore, medical testimony was apt. Mobile Life Ins. Co. v. Walker, 58 Ala. 290, "a bodily infirmity not disclosed."

The dictum in Life & Casualty Ins. Co. v. Bell, 235 Ala. 548, 180 So. 573, 576, i. e.,

"Dr. Cooper had qualified as an expert, being familiar with the subject, and, therefore, could answer the questions propounded as to whether or not the assured was totally and permanently disabled, and what the term 'total permanent disability' means,"

seems to have been validated in Lindsey v. Barton, 260 Ala. 419, 70 So.2d 633.

■ Assignment 12 concerns a question asked Mr. Kelley on direct examination: "I will ask you whether or not you have been able to do any kind of work?" In the light of the context of Kelley's prior testimony as to exertion and pain, the trial judge properly treated the question as calling for a statement of a collective fact. Moreover, without objection, Kelley had testified that he was unable to do any physical work and that manual labor was all he was suitable for by trade and training. We fail to see how testimony as to inability to do "any kind of work" could injure United Security. Supreme Court Rule 45, Code 1940, Tit. 7 Appendix.

■ We cannot agree with Assignment 1 (error in overruling of demurrers). The policy was made a part of the complaint; hence, an allegation of disability within its meaning sufficed. The policy maximum was $1,080, the payments were monthly, $324 was admitted paid and the suit claim was for the difference, i. e., $756; therefore, United was apprised of the length of time (i. e., until exhaustion of benefits) for which Kelley was claiming. Kelley's allegations that the policy was his property and that he had paid the premiums sufficed as a claim that the policy was in effect. Police & Firemen's Ins. Ass'n v. Crabtree, 215 Ala. 36, 109 So. 156; Jefferson Standard Life Ins. Co. v. Simpson, 228 Ala. 146, 153 So. 198.

United Security's Assignment 2 would put the trial court in error for "failing to enter a decree on appellee's plea of recoupment and payment." Inasmuch as Proposition of Law II accepts the total and permanent disability definition set forth in Protective Life Ins. Co. v. Wallace, 230 Ala. 338, 161 So. 256, most of this argument is limited to the insufficiency of the evidence, but on this point it is not properly predicated on a narrative of testimony as required under Supreme Court Rule 9. 261 Ala. xxii—xxiii.

■ United Security, under Assignment 3, argues that Kelley failed to prove notice to the company. However, Proposition of Law IV, cited in brief to support the argument as to notice, reads:

"An allegation that the injury occurred while the policy was in full force and effect must be made in order to recover. Knights of [Modern] Macabees v. Gillespie, 71 So. 67, 14 Ala.App. 493."

This proposition does not directly connect up with the argument. Moreover, Kelley adduced proof by a letter from United Security denying liability under Section B and referring to the $324 paid and that the company was aware of his claim. We consider waiver of proving notice and loss claims was shown by the effect of this letter. American Automobile Ins. Co. v. English, 266 Ala. 80, 94 So.2d 397.

■ Under part of Assignment 3's argument "all that has been set forth under the argument" of 2 is adopted. Strictly, since the two assignments have only one element in common ("recoupment"), the adoptive method is inappropriate, Stiles v. Lambert, supra, except as to recoupment which we have gone into above.

Assignment 14 (error in judgment because of Kelley's failure to prove notice), Assignment 15 (error in denying United Security's plea of payment), Assignment 16 (error in awarding $756 under Section "B" rather than "A") and Assignment 17 (error in awarding judgment for Kelley for his being continuously and totally disabled, etc.) have been above discussed.

The motion for new trial and Assignment 13 raise the propriety of the amount of recovery, $756, which represented the gross policy amount, $1,080, less $324 which United Security had paid Kelley before the complaint was filed on July 11, 1958. The trial judge seems to have allocated $270 of the $324 as a lump sum for the loss of the limb under Section A with the remaining $54 applied under Section B.

The accident befell Kelley October 1, 1957. He sued after the lapse of nine months which covered enough total disability installments then accrued which, with the $270 as a lump sum, made $756 suit amount due and unpaid.

■ However, if we allocate any benefits as a lump sum under Section A (loss of limb), then we are confronted by the last sentence of that section:

"* * * Payment of benefits under this Section shall be in lieu of all other benefits *under this policy.*" (Italics supplied.)

This language does not here come within the ambiguity rule and hence is due the same treatment for fair meaning as required in all plainly worded contracts.

■ Under the Davies case, supra, we *understand that the specific loss and the* disability clauses stand as alternatives. In that case the specific loss clause did not come into play because the loss of legs, resulting in total disability, put the higher obligation into effect. So here we think Section B operates to the exclusion of Section A.

Under the instant policy and facts, Mr. Kelley, on his present complaint, is entitled to $90 a month plus interest[3] on each installment from each due date thereof for nine such monthly installments, minus credit against principal and interest[4] for $324 theretofore paid. This view is without prejudice to Kelley's claim for the three last installments.

We have reached this conclusion as to Assignment 13 upon a consideration of Code 1940, T. 9, §§ 62 and 64, and T. 7, § 140, which latter section we quote in part:

"* * * *if the breaches occur at* successive periods in an entire contract (as where money is to be paid by installments), an action will lie for each breach; but all the breaches occurring

---

3. Code 1940, T. 9, § 62; North Carolina Mutual Life Ins. Co. v. Terrell, 227 Ala. 410, 150 So. 318, 89 A.L.R. 1459; Liberty National Life Ins. Co. v. Stringfellow, 38 Ala.App. 594, 92 So.2d 924.

4. Code 1940, T. 9, § 64.

up to the commencement of the action must be included therein."

Thus, in A. P. Carrico & Son v. J. E. Duval Printing Co., 219 Ala. 65, 121 So. 59, 60, the court, per Bouldin, J., said:

"The suit was brought on January 22, 1927. The demand included four deliveries for that month. Judgment went for full amount. In this was error. There could be no recovery in this suit for installments maturing after suit brought. Default in payment when due, was part of plaintiff's case. The general issue cast this burden on them. Outcault Advertising Co. v. Hooten & Co., 11 Ala.App. [454,] 455, 66 So. 901."

Accordingly, the judgment will be affirmed on condition of appellee's filing, within thirty days, a remittitur following the above principles; otherwise, the judgment will be reversed and the cause remanded.

Affirmed conditionally.